Wallace Ray MACK, Jr., and Beryl
B. Mack, Appellants,

v.

Mike LANDRY, Lillian George Landry,
Henry Knauf, Doris Knauf Hrumadka,
and Diane Knauf Nixon, Appellees.

No. 14–98–00580–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 2, 2000.

Susan J. Taylor, Ben A. Baring, Houston, for appellants.

Geoffrey H. Bracken, Bill Jones, David H. Timmins, Houston, for appellees.

Panel consists of Justices SEARS, CANNON, and SONDOCK.*

* Senior Justices Ross A. Sears, Bill Cannon,

## OPINION ON MOTION FOR REHEARING

BILL CANNON, Justice (Assigned).

Appellants (Macks) filed a motion for rehearing of this cause on January 28, 2000. We withdraw our former opinion and judgment dated January 13, 2000, and substitute the following. We write to clarify the issue raised in appellants' motion. Appellants have asked that a metes and bounds description of the easement be used to describe the easement this court determined to exist in favor of appellees. Appellants have furnished this description which was plaintiff's Exhibit 17 introduced into evidence at trial, and which said metes and bounds description is of the existing gravel drive we determined to be the easement for appellees. This issue presented by appellants requires modification of the former judgment, and we will grant the motion for rehearing and dispose of the case without rebriefing or oral argument. *See* TEX.R.APP. P. 49.3.

Appellants (Macks) appeal from a declaratory judgment in a bench trial establishing an easement on their property in favor of appellees. In their first three points of error, appellants contend the evidence was legally insufficient to establish an easement on appellants' land (1) by estoppel, (2) by necessity and implication, or (3) by prescription. In their fourth point of error, appellants contend the easement granted in the trial court's judgment is void for lack of adequate description. We modify the judgment of the trial court to correct the description of the easement granted to the appellees; we affirm the remainder of the judgment.

### I. FACTUAL BACKGROUND.

Appellants purchased 5.2769 acres of land (200 E. Burress) from Horace and Ruby Clifton in 1992. A gravel road intersects about 20 feet south of the northeast corner of appellants' property on appellants' eastern property line, and continues

and Ruby K. Sondock sitting by assignment.

west for 18 feet, then curves northwest for about 19 feet where it intersects the northern property line of appellants' property. The northern property line of appellants' property is also the southern boundary line of appellees' 2.25 acres of land (201 E. Burress). The road is about 12 feet wide. The road connects with a concrete bridge built by appellees' predecessors at appellants' eastern property line. The bridge extends easterly over a drainage ditch owned by Harris County and connects to the west end of Burress Street.

William Knauf bought the 2.25 acres of land in 1933 from John Scmitt. The Knauf heirs sold the 2.25 acres (201 E. Burress) to Landry in 1994. Henry Knauf testified that his father, William Knauf built the concrete bridge in 1933–1934. William Knauf and his children used the bridge and the road to get access to their 2.25 acres from 1934 through 1994. Henry Knauf testified that the bridge and the road were the only means of getting to his place. Henry Knauf stated that no prior owners of Macks' property ever disputed his right to use the bridge and the road. The bridge and road were also used by prior owners to get access to the 5.2769 acres purchased by appellants. Service vehicles such as septic tank trucks, water trucks, and fire trucks also used the bridge and road to get to the 2.25 acres. William Knauf cleared the 2.25 acres and built his home on the land, and Henry Knauf and his sisters lived there after their father and mother died.

After the Macks bought the 5.2769 acres from the Cliftons in 1992, they approached Mr. Knauf about putting a chain across the bridge for security purposes. The Macks never told Mr. Knauf he could no longer use the bridge and the roadway, and testified that the Landrys and Henry Knauf were free to continue using the graveled portion of the roadway and the bridge. The Landrys have a construction business and use large, earth-moving vehicles and trucks. After they purchased the 2.25 acres from the Knauff heirs in 1994, they used the road and bridge with their large equipment, and had to make wide swings with the equipment to get through the opening in the fence. When making these wide swings, Landrys' vehicles often went off the graveled portion of the road and left ruts in the land adjoining the road. The Macks filed a suit for a permanent injunction to prevent the Landrys from using the road and bridge. The Knauf heirs were joined in the suit, and the Knaufs and the Landrys counterclaimed for a permanent easement.

## II. STANDARD OF REVIEW.

Appellants challenge only the legal sufficiency of the evidence to support the trial court's declaratory judgment granting the appellees a permanent easement across the road. Appellants contend there is no evidence to support the trial court's findings and conclusions that an easement exists under any of the four theories presented by appellees: (1) easement by estoppel; (2) easement by implication; (3) easement by necessity; and (4) easement by prescription.

This was a bench trial and the trial judge entered findings of fact and conclusions of law. Because we have a statement of facts, the trial court's findings of fact are not conclusive. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). In reviewing the trial court's findings of fact for legal sufficiency of the evidence supporting them, we apply the same standards as we apply in reviewing the sufficiency of the evidence supporting a jury's finding. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Thus, in reviewing appellants' legal insufficiency points, we may consider only the evidence and inferences, viewed in their most favorable light, that tend to support the trial court's finding, disregarding all evidence to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is

any evidence of probative force to support the finding, we must uphold the finding. *See Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988).

Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Spiller v. Spiller,* 901 S.W.2d 553, 556 (Tex.App.—San Antonio 1995, writ denied). Conclusions of law will not be reversed, unless they are erroneous as a matter of law. *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied). In addition, a trial court's conclusions of law are reviewed de novo as legal questions. *Id.* Incorrect conclusions of law will not require a reversal, however, if the controlling finding of facts will support a correct legal theory. *Id.*

## III. DISCUSSION.

**A. Easement by Estoppel.** In their first issue, appellants contend there is no evidence to support the trial court's finding of an easement by estoppel. Specifically, appellants contend there was no evidence that the Macks made any representations to the Knaufs or the Landrys concerning the use by the Landrys or the Knaufs of the road and bridge. They further contend that a vendor/vendee relationship must exist between the grantor and grantee to establish an easement by estoppel, and that does not exist here between the Macks and the Landrys.

In general, one who attempts to create an easement by estoppel must show that (1) a representation must have been communicated to the promise, (2) that it must have been believed, and (3) that there must have been reliance upon such communication. *Doss v. Blackstock,* 466 S.W.2d 59, 61 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). But the doctrine of easement by estoppel (sometimes referred to estoppel in pais) has not been applied with the same strictness and conclusiveness as easements by implication. The

supreme court stated: "[T]he exact nature and extent of the doctrine of estoppel in pais have not been clearly defined." *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 209 (Tex.1962). In certain situations, the supreme court suggested that the cases should more properly be based upon a construction of the grant in the light of the surrounding circumstances. *Id.* at 210.

In *North Clear Lake Development Corp. v. Blackstock,* 450 S.W.2d 678, 684 (Tex. Civ.App.—Houston (14th Dist.) 1970, writ ref'd n.r.e.), this court, in finding an easement by estoppel, also considered the fact that improvements which had been made were permanent and substantial, that such improvements were open and obvious to the owner of the servient estate, that the servient estate had constructive notice of the activities of the dominant estate holders, and that such use and improvements had the tacit consent of the servient estate owners because there was no complaint made when the improvements were constructed. There was a vendor/vendee relationship between the owners of the various tracts in *North Clear Lake Development Corp. Id.*

In *Exxon Corp. v. Schutzmaier,* the Beaumont court of appeals held the facts established easement by estoppel even though there was no vendor/vendee relationship between the owners of the dominant and servient estates. 537 S.W.2d 282, 285–286 (Tex.Civ.App.-Beaumont 1976, no writ). There was no question that the only means of ingress and egress for the dominant tenant (Schutzmaier) was by Loop Road which was located on Exxon's property. *Id.* This access was used for 22 years by the Schutzmaiers' predecessor in title, Brawner, without any apparent interference by Exxon. *Id.* In 1972, Brawner conveyed the property to the Schutzmaiers who expended money on their property and made improvements thereon. *Id.* It was found that Brawner relied upon Exxon's apparent consent in the use of Loop Road when he obtained an express easement in 1950 to the Loop Road, and that

he and his successors in title had continued to rely on this use. *Id.* Until 1972 or shortly thereafter, school buses, mail delivery vehicles and other public persons used the Loop Road with full use and enjoyment. *Id.* Exxon knew of the Schutzmaiers' actions on their property and their use of the road, but there was no indication that any complaints were made until 1972, shortly after the Schutzmaiers acquired the property. *Id.* Gates were then erected across the roadway which designated the road as private, and sections were plowed up. *Id.* It was then that school buses and mail trucks plus others were unable to gain access to Schutzmaiers' property. *Id.* The court of appeals held that Exxon was estopped by their conduct to deny the Schutzmaiers an easement. *Id.*

In this case, the Macks admit that the Knaufs and the Landrys had a right to use the bridge and the road to get access to their 2.25 acres. The record shows that Mr. Landry approached Mr. Mack about enlarging the driveway and Mr. Mack told him, "don't use anything but the existing driveway." Mr. Mack further stated that he had no complaints about the Knaufs and the Landrys use of the road as long as they stayed on the "existing gravel." Mrs. Landry stated that she first discussed the road problem with Mrs. Mack in October 1994, when she observed the Macks putting some type of material on the driveway. Mrs. Landry told Mrs. Mack that this limited their use of the driveway, and they could not drive larger vehicles onto their property without swinging wide and running off the driveway. Mrs. Mack showed Mrs. Landry a survey of the land and stated that she and her husband owned the property and could do what they pleased. Mrs. Landry replied that "we were led to believe this was the easement for the property."

Mrs. Landry further stated that she and her husband subsequently made temporary arrangements to cross a neighbor's land to the north for ingress and egress. However, she stated that this arrangement could be terminated at anytime by the other land owner. Photographs were placed into evidence showing this temporary road located at the northern end of the 2.25 acres. Mrs. Landry stated they cut down many trees on their property, hauled over 200 loads of dirt for it, repaired the water well, installed a new septic system, put a new roof on the house, and made numerous other repairs at a cost of between $75,000.00 and $80,000.00. She stated that when Mr. Knauf showed them the property the first time, he indicated that the road and bridge were the only means of getting on the property.

The Macks do not dispute the fact that the Knaufs and the Landrys have a right to use the driveway to access their property. The dispute arises over the mode of use by the Knaufs and the Landrys; the Macks have no objections to the use of the road as long as the Knaufs and the Landrys keep within the confines of the graveled road. We find the Landrys have shown that the Macks made a representation that the easement exists, which they believed, and upon which they relied by making extensive improvements to their property. Accordingly, we find that there is more than a scintilla of evidence to support the trial court's finding of an easement by estoppel.

Appellant further argues that there must be a vendor/vendee relationship before appellees have a right to an easement by estoppel and cite *Scott v. Cannon,* 959 S.W.2d 712, 721 (Tex.App.-Austin 1998, pet. denied) as authority. The courts of appeals are divided on whether an easement by estoppel (1) can be spawned by mere silence, or (2) can occur apart from a vendor/vendee relationship. The Amarillo court of appeals found an easement by estoppel where a landlocked tract had been accessed for more than seventy years via a 400 yard road across appellant's property. *See Wallace v. McKinzie,* 869 S.W.2d 592 (Tex.App.-Amarillo 1993, writ denied). Even though there had never been any unity of title between the two

tracts, *i.e.*, no vendor/vendee relationship had ever existed between the owners of the servient and dominant estates, the court held that "through their permissive and acquiescing behavior, the [owners of the servient estate] have engaged in representations by their *conduct.*" *Id.*, at 596 (emphasis added).

In *Schutzmaier*, there was no vendor/vendee relationship. *Schutzmaier*, 537 S.W.2d 282, 285–286. In *Schutzmaier*, the representation requirement of the estoppel was the *conduct* of Exxon which Schutzmaier relied on, and made improvements to his property. *Id.*

In contrast, the Austin court of appeals has held that passive acquiescence "for no matter how long a period" will not estop a landowner from denying the existence of an easement across his land. *See Scott,* 959 S.W.2d 712, 721. Moreover, the Austin court held there must be "a vendor/vendee relationship to establish an easement by estoppel." *Id.* at 720. The court concluded that the essence of the doctrine is that "the owner of land is estopped to deny the existence of an easement by making representations that are acted upon by a *purchaser* to his detriment." *Id.* (emphasis in original).

The facts in this case are similar to *Schutzmaier* and *Wallace.* Without the easement upon which the Landrys and Knaufs have relied, they would be landlocked. Should the temporary arrangement they have with their neighbor to the north be terminated, they would have no way to get to their property. In a recent opinion, this court has stated its reluctance to hold that a vendor/vendee relationship is a necessary prerequisite to an easement by estoppel where a party has relied to his detriment upon an affirmative misrepresentation. *See Stallman v. Newman,* 9 S.W.3d 243, 248 & n. 2 (Tex.App.-Houston[14th Dist.] 1999, no pet. h.). Accordingly, we find the trial court correctly granted declaratory judgment for appellees establishing a permanent easement in favor of appellees on the estoppel theory.

We overrule appellants' contentions concerning easement by estoppel in issue one.

**B. Easements by Necessity and by Implication.** In issue two, appellants contend that there can be no easements by necessity and implication because appellees did not prove unity of ownership at the time the dominant and servient estates were severed.

**■ 1. Easement by Implication.** To prove an easement by implication, three requirements are necessary: (1) there must be an apparent use, in existence at the time of the grant, *i.e.*, a road into or out of the granted area; (2) the use must be continuous; and (3) the use must be necessary to the use of the dominant estate. *Drye,* 364 S.W.2d at 207; *Meredith v. Eddy,* 616 S.W.2d 235, 240 (Tex.Civ. App.—Houston [1st Dist] 1981, no writ).

**■** The common boundary line between the properties is the southern boundary of the north 1/2 of Lot 14, Halff Subdivision, which is also the northern boundary of the south 1/2. of Lot 14, Halff Subdivision. The road crosses appellant's property in the south 1/2 of Lot 14 and intersects the boundary line between the north and south halves of Lot 14. The record contains two deeds from the common owner of both halves, Samuel Williams, who deeded the south 1/2 of Lot 14 to H.T. Sweet in 1905. There are no other records showing property transactions in the south 1/2 of Lot 14 until the Macks deed in 1992. In that deed, the description of the property shows that the 5.2727 acres was the same property described in three deeds to the Cliftons starting in 1951 from unknown grantors. The record contains a deed from Samuel Williams for the north 1/2 or Lot 14 (containing 10 acres) to John Schmitt in 1908. The 2.25 acre tract of appellees was conveyed by Schmitt out of the north 1/2 of Lot 14 to William Knauff in 1933. The road and bridge were built by William Knauf sometime between 1933 and 1934 and there is nothing in the record to show

that this easement was in use when he acquired it. Therefore, we find appellees would not be entitled to an easement under the first requirement for easement by implication. Appellants' contention in issue two that there was no easement by implication is sustained.

**2. Easement of necessity.** Texas case law establishes that when a grantor conveys part of a tract of land while retaining the remaining acreage for himself there is an implied reservation of a right of way by necessity over the land conveyed, when no other access exists. *Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984); *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397 (1944). The elements needed to establish an implied easement by necessity are: (1) unity of ownership prior to separation; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of severance of the two estates. *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637 (1958).

To establish unity of ownership the claimant must prove prior to severance, his grantor owned the dominant and servient estate as a unit or single tract. *Koonce,* 663 S.W.2d at 452; *Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 167 (1952); *Persons v. Russell,* 625 S.W.2d 387 (Tex.App.—Tyler 1981, no writ). There is no evidence the 2.25 acre tract and the 5.2527 acres were ever owned as a unit by John Schmitt. Samuel Williams severed the south and north halves of Lot 14, and there is no evidence of necessity of an easement at the time of this severance. The record contains no deeds, or other evidence of title, to the successors in title to the south 1/2 of Lot 14 purchased by H.T. Sweet from Williams from 1905 until 1992. Therefore, we hold the appellees failed to establish the element of unity of ownership between the dominant and the servient estate. Appellants' contention in issue two that there was no easement by necessity is sustained.

**C. Prescriptive easement.** In issue three, appellants contend that appellees cannot claim an easement by prescription because they did not have the exclusive use of the road and bridge. Because the road and bridge had been used by the Macks and their predecessors, appellants contend the element of hostility was not established by appellees.

As distinguished from easements by estoppel in which one looks to the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under a color of right. *See Scott,* 959 S.W.2d at 721. A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years. *See Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex. 1979).

There is no dispute that appellees' use of the road was open and nearly continuous from 1934 to 1994. The only issue before us is whether such use was "hostile." The hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *See Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 626 (1950). One general test to determine whether a claim is hostile is whether the adverse possessor's use, occupancy, and possession of the land is of such nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land. *See Scott,* 959 S.W.2d at 722.

Henry Knauf testified that his family used the road jointly with the past owners of the Macks' property and none of them complained about their using the road. The Procains owned the 5.2527 acres at about the time William Knauf built the road, and they used the road and bridge with him. Thereafter, the Cliftons owned the property and they used the road with the Knauf family without complaining to the Knaufs. Then the Macks

bought the property in 1992 and used the road as their driveway in common with the Knaufs and the Landrys. The Macks admit that the Knaufs and Landrys had a right to use the road, and protest only the mode of use by the Landrys causing damage to their property. Other than joint continuous use of the easement, there is nothing in the record to show an adverse, or hostile act, wherein the Knaufs and Landrys have attempted to exclude all other persons from using the road. Joint continuous use alone without an independent hostile act attempting to exclude all other persons, including the property owner from using the roadway, is not sufficient to establish an easement by prescription. *Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex.1987) (exclusivity not met when landowner and claimant both used the road); *Brooks,* 578 S.W.2d at 673 (when landowner and claimant of easement both use same way, use by claimant is not exclusive of owner's use and therefore is not adverse); *Scott,* 959 S.W.2d at 721–722; *Wilson v. McGuffin,* 749 S.W.2d 606, 610 (Tex. App.—Corpus Christi 1988, writ denied) (when landowner and claimant of prescriptive easement freely use the road, there is no evidence of exclusive use); *Stark v. Morgan,* 602 S.W.2d 298, 306 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.) (periodic use by landowner with claimant is enough to show that the required element of exclusivity was lacking); *International Paper Co. v. Aydelott,* 584 S.W.2d 880, 881 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (use of road was not exclusive as required for prescriptive easement).

In *Scott,* the court of appeals found that the Scotts' filing of an affidavit in the real property records claiming the road was public was not sufficient to begin the prescriptive period. *Scott,* 959 S.W.2d at 722–723. However, upon discovery of the affidavit by their attorney, the Scotts told the Cannons that they had a right to use the road. *Id.* The *Scott* court held: "[W]e believe that this is the type of distinct and positive assertion which we required in *Wiegand* [*Wiegand v. Riojas,* 547 S.W.2d

287, 290 (Tex.Civ.App.—Austin 1977, no writ) ] to 'transform permissive use of an easement into an adverse use.' " *Id.* at 723. In this case, there was no such independent act of hostility to turn the joint permissive use of the road into a prescriptive easement. We find appellees failed to establish the requirement of hostility to transform permissive use of an easement into an adverse use so as to begin the prescriptive period. We sustain appellant' contention in their third issue that there is no evidence to support any finding of a prescriptive easement.

**D. The Description in the judgment.**
In issue four, appellants contend the trial court's hand-drawn boundary designating the permanent easement was inadequate. Appellants argue that there was no metes and bounds description in the judgment, and a surveyor could not locate the property on the ground with just the trial court's drawing. Appellants further contend there are no pleadings nor evidence to support the trial court's enlargement of the existing boundaries in its hand-drawn easement and the easement is therefore void.

We attach a copy of the hand-drawn easement to this opinion. The trial court drew the boundary on the survey prepared by Mr. Roth, who surveyed the road on the ground and established proposed boundaries for a proposed easement. His proposed easement would give large vehicles enough room to negotiate the curve, and enter the Landrys' 2.25 acres without damaging the Macks' property. The trial court found that a smaller easement would be sufficient under the circumstances of this case.

Paragraph 3 of the judgment described the permanent easement as follows:

3. The easement made the subject matter of the above-referenced and numbered cause is located and shown as a road on a survey attached to this Final Judgment; the pertinent portion of such survey which is entitled "An Exhibit of a

Proposed Access Easement to the William Henry Knauf Tract Samuel W. Allen Survey, A–94 Harris County, Texas" is included as a portion of this Final Judgment with the easement marked and described by metes and bounds accordingly. Such survey is a true and correct copy of the survey admitted into evidence at trial as Defendants' Exhibit No. 9

The trial court's drawing encompasses a much larger portion of the Macks' property than they were willing to give appellees. In their pleadings, appellees asked only for "a declaration that an easement of ingress and egress by estoppel" and that appellants "represented by words and conduct that an easement exists across the property." Appellees did not plead any specific location of the easement, nor did they ask for more than the existing gravel drive. The evidence showed that the Macks intended only to give an easement to the Landrys and Knaufs across the existing gravel drive. Where easements by implied dedication and by estoppel are involved, we look to the intent or actions of the alleged easement's grantor. *Scott*, 959 S.W.2d at 721. Here, the Macks intended only to give the Landrys and Knauf heirs the same rights that the Knauf family had enjoyed since 1934, *i.e.*, a defined ingress and egress limited to the confines of the existing roadway established and used by the Knaufs since 1934. We sustain, in part, appellants' contentions in issue four that the trial court's drawing was not supported by the evidence. We overrule appellants' contentions in issue four that the pleadings do not support the judgment. The trial court's error goes only to the *location* of the easement because the facts and circumstances established only a right to ingress and egress over the existing gravel drive.

Accordingly, we modify paragraph 3 of the trial court's judgment to reflect the correct location of the equitable easement that appellees would be entitled to under the facts and circumstances of this case. We modify the trial court's final judgment to read:

3. The easement made the subject matter of the above-referenced cause is for ingress and egress only, and its use is confined to the boundaries of the existing gravel road as shown on the survey of this easement fully described in Exhibit "A," which is attached hereto, made a part of this opinion and judgment, incorporated herein by reference, and is further referred to for all pertinent purposes. This survey is Plaintiff's Exhibit Number 17, in that certain cause numbered 95–07641, styled "Wallace Ray Mack, Jr., and Beryl Mack vs. Mike Landry and Lillian George Landry, et al.," in the 127th District Court, Harris County, Texas.

Having found an easement by estoppel exists, we overrule appellants' last request to set aside the award of attorney's fees to appellees if we find no easement.

We modify the judgment of the trial court to correct paragraph 3, as set out above, and affirm the remainder of the judgment of the trial court.

HAND-DRAWN EASEMENT BY TRIAL COURT
(Attachment to Opinion in No. 14-98-00580-CV)

**CHARLIE KALKOMEY SURVEYING, INC.**

1815 MONS AVENUE
ROSENBERG, TEXAS 77471
(713) 342-2033

F I L E D
CHARLES BACARISSE
District Clerk

MAY 23 1996

Harris County, Texas

By _____ Deputy

CHARLIE KALKOMEY
REGISTERED PROFESSIONAL LAND SURVEYOR

CHARLES A. KALKOMEY
REGISTERED PROFESSIONAL LAND SURVEYOR

FIELD NOTES FOR A 463- SQUARE FOOT ACCESS EASEMENT IN THE S. W. ALLEN SURVEY, ABSTRACT 94, HARRIS COUNTY, TEXAS, BEING A PORTION OF LOT 14 OF THE F. HALFF SUBDIVISION, RECORDED IN VOLUME 72, PAGE 57 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS, AND BEING A PORTION OF THAT CERTAIN CALLED 5.2796 ACRE TRACT OF LAND CONVEYED TO RAY MACK, JR., ET UX, AS DESCRIBED BY INSTRUMENT RECORDED IN COUNTY CLERK'S FILE NO. N657604 OF THE OFFICIAL PUBLIC RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: WITH ALL BEARINGS HEREIN BEING BASED UPON THE EAST LINE OF THE F. HALFF SUBDIVISION AS BEING SOUTH;

COMMENCING at a 5/8 inch iron rod with aluminum cap marked "2506" set in the east line of Lot 14 of said F. Halff Subdivision, same being in the west line of the Garden Acres Subdivision as per map or plat thereof recorded in Volume 9, Page 39 of the Map Records of Harris County, Texas (M.R.H.C.T.), said point being the southeast corner of a certain adjoining called 2.25 acre tract of land conveyed to William H. Knauf, as described by instrument recorded in Volume 919, Page 565 of the Deed Records of Harris County, Texas (D.R.H.C.T.), said point being the northeast corner of the said called 5.2796 acre tract, surveyed as 5.2527 acres of land this date;

THENCE South along the east line of the said F. Halff Subdivision, same being the east line of the said 5.2527 acre tract, 19.47 feet to a point for the lower northeast corner and Place of Beginning of the herein described easement;

THENCE South, continuing along the east of the F. Halff Subdivision, same being the east line of the said 5.2527 acre tract, 8.02 feet to a point for the southeast corner of the herein described easement;

THENCE North 86 degrees 17 minutes 33 seconds West, 18.17 feet to the point of curvature of a curve to the right;

THENCE along said curve to the right, having a central angle of 71 degrees 00 minutes 14 seconds, a radius of 15.00 feet, a length of 18.59 feet, and a chord bearing North 50 degrees 47 minutes 26 seconds West, 17.42 feet to the point of tangency of said curve;

THENCE North 15 degrees 17 minutes 19 seconds West, 15.93 feet to a point in the north line of the said 5.2527 acre tract, same being the south line of the aforementioned adjoining called 2.25 acre tract, for the northwest corner of the herein described easement;

THENCE South 89 degrees 53 minutes 04 seconds East, along the common line of the said 5.2527 acre tract, and the aforementioned adjoining called 2.25 acre tract, 10.37 feet to a point for the upper northeast corner of the herein described easement;

EXHIBIT "A"- p. 1 of 2 pages

PLAINTIFF'S
EXHIBIT NO. 17
FOR IDENTIFICATION
4-24-96
DATE: RPTR: LMH

THENCE South 15 degrees 17 minutes 19 seconds East, 1.03 feet to the point of curvature of a curve to the left;

THENCE around the said curve to the left, having a central angle of 71 degrees 00 minutes 14 seconds, a radius of 25.00 feet, a length of 30.98 feet, and a chord bearing South 50 degrees 47 minutes 26 seconds East, 29.04 feet to the point of tangency of said curve;

THENCE South 86 degrees 17 minutes 33 seconds East, 2.70 feet to the Place of Beginning and containing 463 square feet of land, more or less.

For reference and further description see survey Plat No.662-01-HA, prepared by the undersigned on same date.

Charles A. Kalkomey
Registered Professional Land Surveyor
Texas Registration No. 2506
October 23, 1995

Job No. 662-01-HA

06620102.HA/27