

## MEMORANDUM OPINION

No. 04-07-00654-CV

**ESTATE OF JOSE ERNESTO TREVINO**, Deceased; Guadalupe P. Trevino,
Jose Jaime Trevino and Patsy Trevino,
Appellants

v.

Billy C. **MELTON**, Daisy Melton, Maria Del Rosario P. Lopez and Miguel G. Lopez, Jr.,
Appellees

From the County Court at Law, Starr County, Texas
Trial Court No. CC-03-132
Honorable Romero Molina, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:         Karen Angelini, Justice
                 Rebecca Simmons, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:   April 3, 2009

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

This case stems from an easement dispute. Appellants Estate of Jose Ernesto Trevino,

Deceased, Guadalupe P. Trevino, Jose Jaime Trevino and Patsy Trevino (the Trevinos) filed a

petition seeking a declaratory judgment that they held an easement appurtenant to Farm to

Market Road 755 (FM 755) by prescription, by estoppel, or by recognition of recordings made in

the plats and deeds recorded in the Office of the County Clerk of Starr County, Texas. Prior to trial, the trial court entered a no-evidence summary judgment in favor of Appellees Billy D. Melton, Daisy Melton, Maria del Rosario P. Lopez, and Miguel G. Lopez, Jr. On the estoppel by easement claim, the trial court rendered judgment on a jury verdict finding that the Trevinos do not have an easement by estoppel over the road in question. We affirm the trial court's judgment that appellants did not have an easement by estoppels, as well as, the summary judgment of no easement by reference. We reverse, however, the trial court's summary judgment of no prescriptive easement.

### FACTUAL BACKGROUND

This dispute concerns a road easement that serves as the only access from the Trevinos' property to FM 755. Beginning in 1958, Jose Ernesto Trevino (Ernesto), the family patriarch, began accumulating what would grow to approximately 330 acres of ranch land. According to the Trevinos, Ernesto built the road almost immediately after purchase. In 1959, the Trevinos granted an easement to Medina Electric to connect electricity to their land, and other improvements to the land followed.

According to the Trevinos, the road connects the Trevino Ranch to FM 755, and provides the only ingress and egress to their ranch. Although there is some question as to who built the road, there is no controversy regarding the Trevinos continued use. In 1963, Appellee Maria P. Del Rosario Lopez's father, Jesus Porras, Jr. (Jesus), purchased the 49.962 acre tract which included the road in question, as part of a larger tract of 204.562 acres. Over the years, there

were three fences with key-locked gates placed on the road: (1) at the entry from FM 755; (2) at an entry onto the Carrera Ranch;[1] and (3) at the entry to the Trevino Ranch.[2]

In 1989, Maria decided to subdivide her land and sell individual lots. The Trevinos agreed to remove the first gate on the road based on Maria's request "prompted by her plan to subdivide her land to sell and because she wanted prospective buyers to be able to view the lots being offered for sale." Maria also assured Jose Jaime Trevino (Jaime) that her sale of the lots along the road would not affect the Trevinos' use of the road.

On March 29, 1989, Emede Barrera and Dario O. Garza purchased two one-acre lots from Maria by warranty deed. One fronted FM 755 and the other tract was located immediately behind the first. Maria told Barrera "that road was going to be there forever for the use of the people." She assured Barrera that the road could be used by anyone that needed to get to the properties in the back. The deed to Barrera, recorded on April 27, 1989, included a metes and bounds description mentioning the "South R.O.W. line of a 40.0 feet Road Easement." After the sale of these two acres through various owners, in April of 2000, the Meltons purchased the two one-acre lots. The deeds included the same language regarding the easement and the Meltons acknowledged the easement noted in the deed.

---

[1] The property situated between the Trevino Ranch and FM 755 is owned by the Carrera family. The Carrera family was not involved in this dispute.

[2] Although the Carreras apparently use a different access for their property, there does not appear to be any issue with regard to the Trevinos crossing the Carrerra property.



Trouble began in November 2002 when the Trevinos leased their property to Ignacio Barrera. For several months, the Meltons voiced concerns regarding vehicles traveling at an unsafe rate of speed on the road. Their complaints, however, were ignored. In response, Billy Melton informed Jaime Trevino that he had twenty-four hours to remove the cattle from the Trevino Ranch because the road would be closed with a locked gate to control the traffic. Billy stated that the Trevinos would be given one key for their use.

On March 9, 2003, Billy obstructed the Trevinos' passage through the road with twenty bales of hay and three vehicles. Both Jaime Trevino and Daisy Melton assert they called the Sheriff's Department and there were allegations by the Trevinos that Daisy used numerous profanities towards them and even threatened them. Billy claimed that he owned the road by purchase, but eventually explained that he was actually in the process of purchasing the road from the Lopezes and Billy conditioned the Trevinos' future use of the road on the Trevinos' production of an easement to use the road.

## NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

"An easement is . . . [the] privilege . . . to use another parcel of land for some limited purpose." *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex. App.—San Antonio 1996, writ denied). The tract of land on which the easement is imposed is the servient estate, and the tract of land benefitted by the easement is the dominant estate. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1963). On March 8, 2005, Appellees filed a no-evidence motion for summary judgment regarding the Trevinos' various easement claims. In response, the Trevinos filed an opposition to the motion for summary judgment and a counter-motion for partial summary judgment.

### A. The Summary Judgment Order

The appellate record does not contain a copy of the trial court's order dated January 25, 2007, resolving Appellees' no-evidence motion for summary judgment. It appears from the record of the arguments made by counsel and the trial court's order signed January 30, 2007 addressing the Trevinos' motion, that the trial court denied the Trevinos' counter motion for partial summary judgment against Defendants Maria Del Rosario Lopez and Miguel G. Lopez, Jr., and previously granted the no-evidence motion for summary judgment with regard to easement by prescription and easement by reference. The January 30th order specifically provides:

> The Court further orders that a jury trial be set on the sole issue of whether or not Plaintiffs can establish and have a right to an easement by estoppel over Defendants' land as described in the pleadings on file with the papers in this cause which issue is not addressed or disposed [of] by the Court's ruling made in this order.

We, therefore, address the trial court's take nothing summary judgment on the Trevinos' claims of easement by prescription and easement by reference.

## B. No-Evidence Standard of Review

Rule 166a(i) provides that a party is entitled to summary judgment if, "[a]fter adequate time for discovery, . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 487 (Tex. App.—San Antonio 2000, pet. denied). "A no-evidence summary judgment [motion] is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Gomez v. Tri City Cmty. Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex. App.—San Antonio 1999, no pet.); *accord* TEX. R. CIV. P. 166a(i). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation marks omitted). Less than a scintilla of evidence exists if the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 620 n.18 (Tex. 2004).

## C. Easement by Prescription

Here, the property interest claimed by the Trevinos is an easement appurtenant; that is, an easement across the servient estate in favor of the dominant estate. The easement burdens the servient estate, benefits the dominant estate, and "attaches to the land of the dominant estate." *Drye*, 364 S.W.2d at 207. Such an easement may be created by a writing, in which case language of conveyance is required. However, an easement appurtenant may also be created without a writing by dedication, implication, or estoppel. *Id*. at 203.

*1. Necessary Elements*

An easement by prescription rests on the claimant's actions under a color of right. "Burdening another's property with a prescriptive easement is not well-regarded in the law." *Toal v. Smith*, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied). To establish "an easement by prescription, the [claimant] must show that his use of [another's] land was: (1) open and notorious; (2) adverse to the owner's claim of right; (3) exclusive; (4) uninterrupted; and (5) continuous for a period of ten years." *Id*. at 435; *Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[A] person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years."); *Stallman v. Newman*, 9 S.W.3d 243, 248 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "[F]ailure to establish any of these essential elements by a preponderance of the evidence," negates the claim of easement. *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979) (citations omitted).

"The hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession." *Mack*, 22 S.W.3d at 531 (citing *Othen v. Rosier*, 148 Tex. 485, 492, 226 S.W.2d 622, 626 (1950)). Adverse possession is defined in section 16.021 of the Texas Civil Practice and Remedies Code as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 2002). "One general test to determine whether a claim is hostile is whether the [claimant's] use, occupancy, and possession of the land is of such a nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land." *Mack*, 22 S.W.3d at 531; *Stallman*, 9 S.W.3d at 248. The

owner of the servient estate must have actual or constructive notice that there was an adverse and hostile claim against the property. *See Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied). In determining whether a claim is hostile, we consider "whether the adverse possessor's use, occupancy, and possession of the land is of such nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land." *Mack*, 22 S.W.3d at 531.

Notably, if permission to use the property is granted, the claim cannot be adverse absent notice of the hostile nature of the claimant's possession. *Wright v. Wallace*, 700 S.W.2d 269, 271 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Establishing that the use is adverse and hostile requires the claimant take open action to obtain a permanent right to use the property, not merely to obtain permission to do so. *See Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987). The easement "claimant must exclude, or attempt to exclude, all other persons, including the property owner[,] from using the roadway." *Stallman*, 9 S.W.3d at 249. Joint continuous use, without a legally adverse or hostile act, is not sufficient. *Mack*, 22 S.W.3d at 532.

*2. Proof at Summary Judgment*

Because the prescriptive easement requires adverse possession for a period of ten years, it is imperative to understand the chronology of events. Ernesto Trevino began purchasing the ranch property in 1959 and continued to purchase property for approximately twenty years. According to the summary judgment evidence, he immediately built the twenty-five foot wide road to his property commencing from the boundary line of the right of way road easement to FM 755 and passing through property that was later purchased by Jesus Porras, Jr., Maria's

father.[3]   The roadway was not only cleared by Ernesto, but he blocked the roadway with a locked gate.  Jaime's testimony that the road construction was performed without the permission of the owner is uncontroverted.

On August 26, 1959, Ernesto openly contracted with Medina Electric Cooperative for permission to use the road as a utility easement.  The co-op installed clearly visible utility poles and electrical lines that provided electricity exclusively to the Trevino Ranch.  Moreover, although contested by Billy Melton, both Jaime and Patsy Trevino provided affidavits that the road was the sole means of ingress to and egress from the Trevino Ranch.

*3. Analysis*

The testimony is uncontroverted that prior to 1989, no one else used the road for any reason.  There is nothing to contradict the Trevinos' testimony that from 1959 until 1989, they maintained open, notorious, exclusive use of the road, including a locked gate, from FM 755.  The locked gate is clearly "some evidence" that the use of the property was exclusive, or that the Trevinos excluded or attempted to exclude all other persons.  *See Stallman*, 9 S.W.3d at 248 ("[H]ostility can be shown by the adverse possessor's decision to 'designedly enclose' the disputed property by erecting a fence."); *accord Mack*, 22 S.W.3d at 528-29 (citing *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285-86 (Tex. Civ. App.—Beaumont 1976, no writ)).  In addition to some evidence of exclusivity, the testimony provides some evidence that for more than the prescriptive period, Ernesto maintained the roadway uninterrupted, continuously, in an open and notorious manner and adverse to the rights of Jesus, the property owner.  Therefore,

---

[3] Based on an Affidavit of Heirship, the testimony supports that Jesus Porras, Jr., Maria's father, purchased the property containing the roadway in question in 1962. On July 10, 1979, Jesus sold a portion of the property to his brother, Domingo P. Porras, and retained the remainder. On December 22, 1980, after the death of her father, Maria inherited the portion of the land belonging to her father.

without deciding the matter, there is some evidence that by the time Maria inherited the property in question, it was already encumbered with the Trevino easement.

Maria acknowledges that she knew the Trevinos were using the roadway, but she maintains that they were using it *with permission*. The use of property with the owner's express or implied permission or license cannot rise to the level of a prescriptive easement, no matter how long the use continues. *Vrazel*, 725 S.W.2d at 711; *Othen v. Rosier*, 148 Tex. 485, 492, 226 S.W.2d 622, 626-27 (1950). Yet, the earliest testimony of permission to use the roadway was in 1989, years or even decades after the prescriptive period had run. When Maria decided to develop her property, she notified the Trevinos that she wanted to designate the road as a subdivision road and to widen it to forty feet in order to be in compliance with Starr County subdivision regulations. There is testimony in the summary judgment record that Maria made assurances that the Trevinos' right to use the road would not be disturbed. Although one could argue that the Trevinos' use of the roadway at that point was permissive, a fact issue exists over whether a prescriptive easement was obtained as much as twenty years earlier.

Accordingly, because the Trevinos produced some evidence that raised a genuine issue of material fact on whether they had obtained a prescriptive easement on the roadway in question, the trial court erred in granting Appellees' no-evidence summary judgment with regard to the Trevinos' claim of a prescriptive easement.

## D. Estoppel by Deed

The Trevinos next assert that the trial court erred in granting the no-evidence summary judgment based on estoppel by deed. Estoppel by deed, or sometimes called estoppel by contract or estoppel by reference, provides that a party to a contract or deed may not, at a later date, take a position inconsistent with its provisions, to the prejudice of another. *See Johnson v. Structured*

*Asset Servs.*, LLC, 148 S.W.3d 711, 721-22 (Tex. App.—Dallas 2004, no pet.) (defining estoppel by contract); *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 799 (Tex. App.—Eastland 2002, pet. denied) (defining estoppel by deed); *Dykes v. City of Houston*, 406 S.W.2d 176, 181 (Tex. 1966); *see also Horne v. Ross*, 777 S.W.2d 755, 756 (Tex. App.—San Antonio 1989, no writ) ("Conveyance of land by reference to a map or plat showing abutting roads or streets results in the purchaser, or one holding under him, acquiring a private easement in the roads or streets shown on the plat."). In other words, "[u]nder the theory of estoppel by deed, the grantor of an estate in land is estopped to assert an interest in or against the estate the deed purports to convey." *Chappell Hill Bank v. Smith*, 257 S.W.3d 320, 326 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Appellees argue there is no written conveyance with respect to the roadway and, therefore, the deeds in question do not support an easement by reference. The evidence, however, contradicts their assertions. In 1988, Maria sold approximately two acres of property, bordered by the roadway in question, to Emede Barrera and Dario O. Garza. An engineering report, filed with the warranty deed on the property describes the property "[b]eginning at a set iron pin on the South R.O.W. line of a 40.0 feet Road Easement for the Northwest corner hereof." Additionally, the diagram attached to the report includes an easement drawn running along the north side of the two-acre plot. Two years later, Mr. Barrera and Mr. Garza sold the property to Hilda Gomez. Ms. Gomez subsequently sold the two acre plot to Elsie F. Limas, and in 2000, the Meltons purchased the property from Ms. Limas. Although the last conveyance does not include the engineer's report, the property is described as bordered by "a proposed 40.0 feet road easement." The evidence before the trial court for the summary judgment included testimony of Billy Melton acknowledging that he knew about the roadway when he purchased

the original two acres from Ms. Limas. He asserts, however, that the additional 2.67 acres that he purchased from Maria in November of 2001, property that included the roadway, gave him absolute right to the roadway, unencumbered by any easements.

While the deeds do not specifically identify, by metes and bounds, the roadway upon which the Trevinos assert an easement, "the description provides enough information so that a party familiar with the locality can identify the premises with reasonable certainty." *Chappell Hill Bank*, 257 S.W.3d at 326-27 (citing *Gates v. Asher*, 154 Tex. 538, 541, 280 S.W.2d 247, 248-49 (1955)). The Trevinos' argument fails, however, because an estoppel by deed precludes *a party* to the document from later denying the road's existence. *See Dykes*, 406 S.W.2d at 181 ("[T]he purchasers of the lots [to whom the seller showed a map with a street, existing or not, touching the lot] have a right to have the street thrown open forever."); *Angell v. Bailey*, 225 S.W.3d 834, 841 (Tex. App.—El Paso 2007, no pet.) ("Estoppel by deed stands for the general proposition that all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." (quoting *Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 654 (Tex. App.—Corpus Christi 2005, pet. denied) (internal quotation marks omitted)). The Trevinos were not a party to any of the deeds described above. The trial court, therefore, did not err in granting the no-evidence summary judgment regarding the easement by deed and we overrule this issue on appeal.

**E. Summary Judgment in Regard to Tort Claims**

In the introductory paragraph and the prayer of their appellate brief, the Trevinos contend the trial court erred in granting a no-evidence summary judgment on the causes of action for assault and malicious prosecution because these causes of action were not addressed or requested

in the appellees' motion for summary judgment. We are constrained in addressing this point because the record does not contain the alleged erroneous summary judgment, and because of Appellants' limited briefing. The Trevinos do not cite any authority or outline their argument on appeal. Thus, the Trevinos have waived a challenge to the trial court's grant of the no-evidence summary judgment. *See* TEX. R. APP. P. 38.1(h) (requiring appellant's brief to contain clear and concise argument for contentions made with appropriate citations to authorities and record); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (recognizing appellant's failure to brief issue results in waiver on appeal).

Additionally, there is no motion for summary judgment that included the tort claims. Likewise, no order disposing of these claims is in the record. During trial, the Trevinos presented evidence regarding Daisy Melton's alleged assault on March 9, 2003. Outside the presence of the jury, the Trevinos requested the trial court sever these causes and abate the same pending the completion of the criminal prosecution. The Trevinos' counsel acknowledged the claims were "not ripe for trial" and that he was limited in his ability to ask questions of the witnesses. The trial court denied the motion. No bill of exception or offer of proof was sought by the Trevinos. *See* TEX. R. EVID. 103(a), (b). Moreover, when the claims were not presented in the trial court's proposed jury charge, counsel neither objected to the charge, nor provided the trial court with a proposed charge including the claims. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); TEX. R. APP. P. 33.1(a) (providing that to preserve a complaint for appellate review the complaining party must have made a timely and sufficiently specific request, objection, or motion in the trial court); *Murray v. O & A Exp., Inc.*, 630 S.W.2d 633, 637 (Tex. 1982) (deciding the party waived

argument that pleadings did not support the charge submission by failing to make a timely objection to the charge on that ground). Accordingly, the Trevinos waived their tort claims and this issue is overruled.

FACTUAL AND LEGAL SUFFICIENCY

## A. Standard of Review

The Trevinos challenge the legal sufficiency of the jury's failure to find easement by estoppel. We review a legal sufficiency challenge to an adverse finding to determine whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law. In doing so, we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

The Trevinos also challenge the jury's failure to find easement by estoppel as against the great weight and preponderance of the evidence. In reviewing this challenge, we must first examine the record to determine if there is some evidence to support the finding and if there is evidence, then we must determine, in the light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). "The court of appeals must consider and weigh all the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* at 241 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986), disapproved on other grounds by *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000)).

## B.  Easement by Estoppel

Three elements are necessary for an easement by estoppel: (1) "a representation communicated, either by word or action, to the promisee"; (2) the promisee believed the communication; and (3) the promisee relied on the communication to his detriment. *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied); *accord Drye*, 364 S.W.2d at 211.  Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied.  *Drye*, 364 S.W.2d at 209.  These representations may be verbal or nonverbal.  *Storms v. Tuck*, 579 S.W.2d 447, 452-54 (Tex. 1979).  "An easement by estoppel once created is binding upon successors in title if reliance upon the existence of the easement continues."  *Holden*, 929 S.W.2d at 131.  Because the easement claimed in the present case is an easement appurtenant to the land, Appellees argue that it is an interest in land which requires a writing to create or transfer.  *See* TEX. PROP. CODE ANN. § 5.021 (Vernon 2003); *Drye*, 364 S.W.2d at 203.

The supreme court has recognized that "[t]he exact nature and extent of the doctrine . . . have not been clearly defined."  *Drye*, 364 S.W.2d at 209.  Although the application of the doctrine of easement by estoppel depends upon the unique facts of each case, this equitable doctrine has been applied to circumstances such as the "dedication of a street, alley, or square"; a conveyance "with reference to a map or plat"; and expenditures by the owner of the alleged easement for improvements on the servient estate.  *Id.* at 209-10.  The doctrine has also been applied to circumstances involving expenditures on the dominant estate.  *See Holden*, 929 S.W.2d at 132; *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285-86 (Tex. Civ. App.—

Beaumont 1976, no writ); *N. Clear Lake Dev. Corp. v. Blackstock*, 450 S.W.2d 678, 683 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.).

## C. Testimony at Trial

The Trevinos were required to prove that a representation was communicated, believed, and relied upon to their detriment. Billy testified that the road in question belonged to Maria and Miguel and that when they divided the property into small tracts, the road was left "open to access the other properties." After his dispute with the Trevinos, Billy spoke to Miguel and was told "if the Trevinos cannot get along with you lock the gate." Additionally, he testified that when he purchased the property there were no easements. Billy opined that although the Trevinos were given permission by the Lopezes to use the roadway, there was never an easement.

The testimony also included a number of contradictions. Maria testified that her father built the road, but Guadalupe Trevino remembered the road being there when she and Ernesto purchased the property in 1959. Throughout her testimony, Maria explained that she continued to honor her father's grant of permission to use the road, but was definite that she had never given any type or form of conveyance of land to the Trevinos. She explained that she was only "honor[ing] her father's word with [Ernesto] Trevino" to "just to continue letting them go by." Moreover, although permission was given to use the roadway, no promises were ever made that the Trevinos would have any type of easement in the property. In fact, Maria acknowledged speaking to Guadalupe and telling her not to worry and that she would talk to the Meltons, but once again she did not make any promises in the form of an easement.

**D. Analysis**

Four questions, all based on a preponderance of the evidence, were posed to the jury: (1) "whether a representation or representations were made by the owners of the property over which the road runs or lies to [the Trevinos] that they had a right to use the road in order to enter and exit out of their land"; (2) whether "a representation or representations were made to [the Trevinos] by words or conduct that they had the right to use the road"; (3) whether "[the Trevinos] believed the representation or representations made by the owners of the property over which the road runs or lies that [the Trevinos] had the right to use this road"; and (4) whether "[the Trevinos] relied to their own detriment on the representation or representations made to them by the owners of the land over which the road runs that they had a right to use the road." To each of these questions, the jury answered, "we do not."

Contrary to the Trevinos' assertions, this case is easily distinguished from *Holden v. Weidenfeller,* wherein this court affirmed an easement by estoppel claim based on similar facts. *See Holden v. Weidenfeller*, 929 S.W.2d 124, 131-32 (Tex. App.—San Antonio 1996, writ denied). Like the Trevinos, the Weidenfellers alleged that they were landlocked owners and had used the road continuously for thirty-five years for ingress and egress before the opposing landowners, the Holdens, attempted to lock them out. *Id*. at 131. Importantly, however, the Weidenfellers bought their property with the understanding that the road gave them access to the property and that the Holdens made no objection to the use of the road for over seven years after the Weidenfellers purchased the property and even allowed the Weidenfellers to place their own lock on the gate. *Id*. at 131-32 (noting the evidence showed that the landlocked owners and their predecessors built a house on the property and had spent significant amounts of time and money improving the property over the years).

There are no such allegations here. To the contrary, the evidence is uncontroverted that Ernesto Trevino purchased the property *prior* to any purchases by Maria's father and there is little to no evidence that the Trevinos actually expended money on the road in question or relied to their detriment on any promises made by any of Appellees or even Jesus Porras. Additionally, there is significant testimony that any representations made by the owners of the property were simply permission to use the roadway to access the Trevino Ranch. More specifically, the Lopezes both testified that Maria's father built and maintained the road and that any use of the road by the Trevinos was by permission based on a relationship between Jesus Porras and Ernesto Trevino. We hold that the evidence was both legally and factually sufficient to support the jury's verdict.

## CONCLUSION

Because the Trevinos failed to properly brief the tort claims, or object before the trial court, their tort claims are waived on appeal. Furthermore, estoppel by reference only protects the purchaser of the property, not an unnamed third-party, and thus, the trial court properly granted the no-evidence summary judgment regarding this easement. We, therefore, affirm the trial court with regard to the no-evidence summary judgment on the easement by reference and tort claims. The evidence at trial was both legally and factually sufficient to support the trial court's judgment of no easement by estoppel.

However, because the Trevinos raised a genuine issue of material fact at the summary judgment hearing regarding each of the elements required for a prescriptive easement, the trial court erred in granting the no-evidence summary judgment on that issue. We, therefore, reverse

the trial court's grant of summary judgment on the Trevinos' claims of prescriptive easement, and remand this matter to the trial court for further proceedings consistent with this opinion.


Rebecca Simmons, Justice