Opinion issued December 29, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00282-CV

———————————

Reid Estates Civic Club, Appellant

V.

Boyer, Inc.;
Lonestar Prestress Mfg., Inc.; Mark Boyer; Laureen Boyer; John L. Boyer; AND
Lyda Boyer;
Appellees



 



 

On Appeal from the 55th District Court 

Harris County, Texas



Trial Court Case No. 2006-38390

 



 

MEMORANDUM OPINION

Reid
Estates Civic Club (RECC) appeals from a judgment rendered  in favor of  John Boyer and his wife Lyda Boyer, Mark Boyer
and his wife Laureen Boyer, and two family-owned businesses, Boyer, Inc.
and Lonestar Prestress Mfg., Inc. (collectively, the Boyers) following a jury trial.  We affirm the portions of the trial court’s
judgment awarding (1) John the land east of lot 5 and to the water’s edge by
adverse possession and (2) Mark the land east of lot 6 and to the water’s edge
by adverse possession.  We reverse the remaining portions of the trial
court’s judgment and render judgment that (1) Mark, John, and Boyer, Inc. take
nothing on their prescriptive easement and easement by estoppel claims, (2)
Lonestar take nothing on its easement by estoppel claim, (3) Lyda and Laureen
take nothing on their adverse possession claims, and (4) RECC succeed on its
trespass claims against Boyer Inc. and Lonestar for the land east of Lots 6 and
7.  We remand the case to the trial court
for further proceedings limited to (1) RECC’s trespass claims against Boyer
Inc. and Lonestar for the land east of lot 4 and (2) determination of damages
for RECC’s trespass claims.

Background

Reid Lake
Estates is an unrecorded subdivision comprised of a mixture of residential and
commercial properties located in northwest Harris County, Texas.  In the late 1970’s, some of the subdivision’s
property owners created RECC as a non-profit corporation to “support and
promote community activities favorable to the continued growth and prosperity
of Reid Lake Estates subdivision.”  On
September 20, 1978, Elsie Ruth Henry Patrick, Trustee, deeded RECC title to a
14.5457-acre tract of land within the subdivision that contains a large
man-made lake, commonly referred to as Reid Lake.  RECC’s property is surrounded by
individually-owned lots, four of which are currently owned by members of the
Boyer family.

John and
his wife Lyda have owned or occupied lots in Reid Lake Estates since the late
1980’s.  In 1988, John and Lyda began
renting lot 5, on the western side of Reid Lake, which they used both as their
residence and for the business operations of Boyer, Inc., a family-owned
business that provides public works services for City of Houston water and
sewer treatment plants and parks and recreation facilities.  In 1991, John and Lyda purchased lot 5 and
their son, Mark, and daughter-in-law, Laureen, purchased lot 6.



Soon
thereafter, Mark began making inquiries into who was responsible for the maintenance
of the lake and its banks, which abutted the eastern edges of lots 5 and
6.  Mark testified that as a result of
poor maintenance of the lake, the eastern edges of lots 5 and 6 were subsiding
into Reid Lake.  According to Mark, the constant
erosion of the lake’s banks worsened when it rained.  After he hired a service to perform a title
search, Mark learned that the lake, its banks, and the remainder of a 14-acre
parcel, had been deeded to RECC in 1978. 
Mark also learned that RECC’s corporate charter had been revoked, and he
could not locate anyone associated with RECC who would agree to accept mail on
its behalf, much less agree to repair and maintain the banks of the lake.  At that point, Mark and his family took it
upon themselves to repair the western bank of Reid Lake on the eastern edges of
lots 5 and 6.  

Mark
testified that as part of the repair and maintenance efforts that began in
1992, he and his family removed trash from the lake and its banks along both
lots.  After they acquired a development permit
from the Harris County Engineer’s office, they also installed a drainage pipe
and built up the banks of the lake with top soil that Mark had hauled in for
that purpose.  Mark also testified that
they planted grass and shrubberies on the top soil, not only to prevent future
erosion, but to create a grassy, flat area along the banks of the lake that the
Boyer family could use for recreational purposes.  The Boyers hired a lawn service to maintain
the property, which needed to be mowed on a weekly basis during the summer
months.

Mark and
John testified that, beginning in 1992, they used the grassy, flat area that
they had created along the lake’s edge behind lots 5 and 6 for a variety of
family and recreational functions, and considered the property their own.  Among other activities, Mark’s daughter kept
and fed about 50 ducks and geese on the banks of the lake, Mark and John rode
golf carts and motorcycles along the improved bank, and the Boyer family used
the area for picnics and fishing. They did not fence the area to take any
action to prevent their neighbors from fishing from their banks.  Mark testified that the Boyer family used the
property on a weekly basis.  

Mark
testified that when he and his wife, Laureen, purchased lot 6 in 1992, there
was already a passable dirt road running in a north-south direction to the east
of lot 7, starting toward the southern side of lot 6 and running to lot 21.  In addition to the dirt, the road was created
using bricks, tile, mortar and “whatever they had.”  The roadway, which was barely passable
because it was covered by debris and a canopy of trees, intersected a Harris
County drainage easement that runs across the northern border of lot 21.  According to Mark, the dirt roadway, which
was built by previous residents, had been used by a dump truck company that had
once occupied lot 6, and by other residents to connect to the bank of land
behind lot 21.  Mark testified that he
had “occasionally” driven golf carts on the roadway before 2002.  When he reached the end of the roadway, he
could not enter lot 21 due to a large amount of debris located at the back of
that property, so he would either turn around or continue down the Harris
County easement that ran along the edge of lot 21. 

Mark and
his mother, Lyda, purchased lot 4 in April 2002 and lot 21 five months
later.  Mark testified that after he
purchased lot 21, they extended the roadway running behind lots 6 and 7 and at
the edge of 21 into lot 21 itself and improved the surface of the dirt roadway
with crushed concrete and milled asphalt installed by a bulldozer, compacter
and maintainer.  The two family-owned
businesses, Boyer, Inc. and Lonestar, have made extensive commercial use of the
roadway since 2002 to connect with their business on lot 21.[1]  

In 2006, officers of the newly-reactivated RECC wrote a letter to
Lonestar and Boyer, Inc. claiming that the companies were trespassing on RECC’s
property and demanded that they vacate the premises.  Mark testified that until this time, no one from RECC had told him
that they could not use the property east of lots 5 and 6 or the roadway behind
lot 7.  Lonestar, Boyer, Inc., and members of the Boyer family subsequently filed
suit against RECC seeking a declaratory judgment regarding their rights to an
easement across RECC’s property and attorneys’ fees, and they asserted claims
for trespass, cost of maintenance, and foreclosure of a mechanic’s lien.  RECC counterclaimed for trespass and sought a
declaratory judgment, attorneys’ fees, and injunctive relief.  

The jury
reached a verdict in favor of the Boyers, Lonestar, and Boyer, Inc.  RECC filed a motion for judgment
notwithstanding the verdict which was granted in part and denied in part.  The trial court rendered a final judgment and
awarded (1) John and Lyda title to RECC’s property east of lot 5 and to the
water’s edge by adverse possession, (2) Mark and Laureen title to RECC’s
property east of lot 6 and to the water’s edge by adverse possession, and (3)
Boyer, Inc., Lonestar, Mark, and John a “roadway easement” over RECC’s property
east of lots 6 and 7.  The trial court rendered
judgment that RECC take nothing on its counterclaims and did not award attorneys’
fees to either side.  This appeal followed. 

issues on
appeal

The Boyers concede that the following portions of the
judgment should be reversed: (1) the portion of the judgment awarding Lyda and
Laureen title by adverse possession to the land east of lots 5 and 6 to the
water’s edge and (2) the portion of the judgment awarding John, Boyer, Inc. and
Lonestar a “roadway easement” appurtenant over RECC’s property east of lots 6
and 7.[2]  Accordingly, we reverse those portions of the
judgment and render judgment that (1) Lyda and Laureen take nothing on their
adverse possession claims, (2) John and Boyer, Inc., take nothing on their
prescriptive easement and easement by estoppel claims, and (3) Lonestar take
nothing on its easement by estoppel claim. 


In light of these concessions, it is unnecessary for us to
address each of the issues raised by RECC. 
Therefore, while retaining their numbers, we have re-characterized
RECC’s issues on appeal to narrow the focus on the remaining issues:

(1)            
Did the trial court err in overruling RECC’s motion for JNOV with respect
to the establishment of a prescriptive roadway easement in favor of Mark over RECC’s property east of lots 6 and 7 and
connecting to lot 21;

 

(2)            
Did the trial court err in submitting Mark’s easement by estoppel claim
to the jury and in overruling  RECC’s
motion for JNOV with respect to the establishment of a roadway easement by
estoppel in favor of Mark over RECC’s
property east of lots 6 and 7 and connecting to lot 21;

 

(3)            
Did the trial court err in overruling RECC’s motion for JNOV with respect
to John and Mark’s adverse possession claims;

 

(4)            
Did the trial court err in overruling RECC’s motion for JNOV with respect
to RECC’s counterclaims for trespass against Lonestar and Boyer, Inc.;

 

(5)            
Is the judgment’s description of the property awarded to Mark through an
easement appurtenant unenforceable because it is (a) ambiguous, (b) unsupported
by the pleadings, and (c) “overreaching” by depriving an unrepresented third
party of its property;

 

(6)            
Did the trial court err in asking the jury to determine whether Mark  established an easement without also asking
the jury to determine the particular use or scope of that easement; and

 

(7)            
Did the trial court err in submitting a good-faith instruction to the
jury as part of the special issue on trespass?

 

I.                 
Easements

RECC’s first, second, fifth, and
sixth issues pertain to the trial court’s grant of a roadway easement
appurtenant in favor of Mark over RECC’s property east of lots 6 and 7 and connecting to lot 21.  Mark
was awarded an easement by prescription and easement by estoppel. 

A.              
Prescriptive Easement

In its first issue on appeal, RECC
contends that the trial court erred in overruling its motion for JNOV because there was no evidence to support the
jury’s finding of a prescriptive easement in favor of Mark.  Specifically, RECC contends that Mark’s usage
of the property was neither continuous nor of such a nature as to put RECC on
notice that Mark was asserting a claim to the property. 

We review the grant or denial
of a motion for JNOV under a legal-sufficiency standard,
crediting evidence favoring the jury verdict if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.  Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 830 (Tex. 2009)
(citing City of Keller v. Wilson,
168 S.W.3d 802, 823 (Tex. 2005)); Whitney Nat’l Bank v. Baker, 122 S.W.3d 204, 207 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). 
In doing so, we recognize that the fact-finder is the sole judge of the
witnesses’ credibility and the weight to be given their testimony, and we
cannot substitute our judgment for that of the fact-finder
so long as the evidence falls within the zone of reasonable disagreement.  City of Keller, 168 S.W.3d at 821–28.

RECC was entitled to judgment notwithstanding the verdict if
the record shows: (1) a complete lack of evidence of a vital fact; (2) the
trial court is barred by the rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is not more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
City of Keller,
168 S.W.3d at 810, 823; Requena v. Otis Elevator Co., 305 S.W.3d 156, 162 (Tex.
App.—Houston [1st Dist.] 2009, no pet.). 
More than a scintilla of evidence exists if the evidence “rises to a
level that would enable reasonable and fair-minded people to differ in their
conclusions.”  Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  However, “[w]hen the evidence
offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, the evidence is no more than a scintilla
and, in legal effect, is no evidence.”  Kindred v. Con/Chem., Inc., 650 S.W.2d
61, 63 (Tex. 1983). Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont’l
Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996).

A prescriptive easement is “a non-possessory interest that
authorizes its holder to use property for a particular purpose.”  See
Koelsch v. Indus. Gas Supply Corp., 132 S.W.3d 494, 497 (Tex. App.—Houston
[1st Dist.] 2004, pet. denied) (citing Marcus
Cable Assocs. v. Krohn, 90 S.W.3d 697, 700 (Tex. 2002)).  Burdening another’s property with a
prescriptive easement is not favored in the law.  Toal v.
Smith, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied).  Unlike other types of easements, an easement
by prescription rests on the claimant’s adverse actions taken under color of
right.  See Scott v. Cannon, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998,
pet. denied).  In order to acquire a
prescriptive easement, the claimant must prove that the property’s use has been
open and notorious, continuous, exclusive, hostile, and adverse for the
requisite time period of ten years.  See Mack
v. Landry, 22 S.W.3d
524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing Brooks v. Jones, 578 S.W.2d 669, 673
(Tex. 1979)); see also State v.
Beeson, 232 S.W.3d 265, 274–75 (Tex. App.—Eastland 2007, pet. dism’d). 

The hostile and adverse
character of the use necessary to establish an easement
by prescription is the same as that necessary to establish title by adverse possession.  Mack, 22 S.W.3d at 531 (citing Othen
v. Rosier, 148 Tex. 485,
226 S.W.2d 622, 626 (1950)).  As such,
the claimant must demonstrate that the property’s use was of such a nature that
it reasonably notified the true owner that a hostile claim to the land was
being asserted.  See Masonic Bldg. Ass’n v. McWhorter, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no
pet.) (“The test for hostility [in an adverse possession proceeding] is whether
the acts performed by the claimant on the land and the use made of the land
were of such a nature and character as to reasonably notify the true owner of
the land that a hostile claim was being asserted to the property.”); see also Scott v. Cannon, 959 S.W.2d 712, 722 (Tex. App.—Austin 1998, pet.
denied) (requiring owner of  servient
estate have actual or constructive notice of adverse and hostile claim against
property in prescriptive easement case). 
The jury charge here instructed the jury both on the limited purpose of
easements and on each of the elements of a prescriptive easement:

An easement is a right to use
land for a limited purpose.  An easement
does not provide its holder with title to property or a right to possess
property, only a right of use. 

 

. . . 

 

A prescriptive easement is shown
when a party’s use of the land was (1) open and notorious, (2) hostile and adverse
to the [owner’s] claim of right, (3) exclusive of the owner’s use, (4)
uninterrupted, and (5) continuous for a ten year period.

Open and notorious means such
open and visible act or acts that knowledge on the part of the landowner will
be presumed.  

Hostile and adverse means acts of
such nature as to notify the true owner that the claimant is asserting a claim
to the land as his own.  

 

Because
Mark did not object to the charge, we determine the sufficiency of the evidence
based upon that charge.  See Romero v. KPH Consol., Inc., 166 S.W.3d 212, 221 (Tex. 2005).

The evidence of Mark’s usage of the roadway is insufficient
to establish his entitlement to a prescriptive easement.  Mark testified that he extended the roadway
and improved the surface of the roadway by adding crushed concrete and milled
asphalt after he and his mother, Lyda, purchased lot 21 in 2002.[3]  Although the roadway improvements were
arguably of such a nature that they should have put RECC on notice that Mark
was asserting a claim of right with respect to the roadway (an issue which we
do not decide), the improvements were not made until after Mark purchased lot
21 in 2002—far short of the ten-year period required to establish a
prescriptive easement.  The only evidence
of Mark’s usage of the roadway before 2002 is his testimony that he
“occasionally” drove a golf cart down the tree-covered roadway.  This evidence of Mark’s sporadic use of the
roadway before 2002 is so weak that it amounts to no more than a
scintilla.  Mark also testified that they
mowed the “pathway” area every week during the summer. It appears from the
record that this testimony does not concern the roadway from lot 6 to lot 21,
but the pathway behind lots 5 and 6. 
Moreover, Mark did not state when they began mowing or who did the
mowing—him, his brother or one of their companies.  He unequivocally testified that they did not
use it for business purposes until after they purchased lot 21.[4]

In conclusion,  there
is no evidence that Mark used the easement in an open and notorious,
continuous, exclusive, hostile, and adverse manner for ten years before the
jury verdict, and the trial court erred in overruling RECC’s motion for JNOV with respect to the establishment of a
prescriptive easement in favor of Mark.  See Ford
Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004) (stating that scintilla of evidence is “no
evidence” at all).

We sustain RECC’s first issue, reverse
the trial court’s judgment in part and render judgment that Mark take nothing
on his prescriptive easement claim.

B.              
Easement by Estoppel

In its
second issue on appeal, RECC argues that the trial court erred in submitting
Mark’s easement by estoppel claim to the jury because the claim was not
raised by the pleadings.  We agree.[5]  

Jury questions must be supported by the pleadings and the
pleadings must contain a short
statement of the cause of action sufficient to give fair notice of the claims
involved.  See Tex. R. Civ. P.
278 (“The court shall submit the questions, instructions, and definitions in
the form provided by Rule 277, which are raised by the written pleadings and
the evidence.”); Tex. R. Civ. P. 47(a)
(pleadings “shall contain . . . a short statement of the cause of action
sufficient to give fair notice of the claim involved . . .”).  In determining whether a pleading is
adequate, we examine whether an opposing attorney of reasonable competence, on
review of the pleadings, can ascertain the nature and the basic issues of the
controversy.  Bowen v. Robinson, 227 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.]
2006, pet. denied).  Furthermore, because
RECC did not specially except to Mark’s petition, we must liberally construe
the pleadings in his favor.  See Whaley v. Cent. Church of Christ
of Pearland, 2004 WL 1405701 at *3 (Tex. App.—Houston [1st Dist.] 2004, no
pet.) (citing Home Sav. of Am. FSB
v. Harris Cnty. Water Control & Improvement Dist. No. 70, 928 S.W.2d
217, 218 (Tex. App.—Houston [14th Dist.] 1996, no writ)).  “The ‘fair notice’ requirement of Texas pleading relieves
the pleader of the burden of pleading evidentiary matters with meticulous
particularity.”  Bowen, 227 S.W.3d at 91. Even if we conclude that the trial
court erred in submitting the claim to the jury, we may not reverse unless the
error probably caused the rendition of an improper judgment.  Tex.
R. App. P. 44.1(a)(1); Crown Life
Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000).

Mark contends that, when liberally construed, his pleadings
were sufficient to put RECC on notice that he was claiming an easement by
estoppel with respect to the “roadway” behind lots 6 and 7 because he alleged
that (1) RECC had failed to maintain Reid Lake and its banks, (2) RECC had
represented to him that RECC would not maintain Reid Lake and its banks in the
future, and (3) he was entitled to an easement to use the roadway connecting
lots 6 and 21.  Mark also contends that
it would be reasonable to infer that he was raising an easement by estoppel
claim because he asserted “estoppel” as an affirmative defense to RECC’s trespass claim.[6] 

The elements of easement by estoppel are (1) a representation
was communicated, either by word or by action, to the promisee, (2) the
promisee believed the communication, and (3) the promisee relied on the
communication to his detriment.  Stallman v. Newman, 9 S.W.3d 243, 246
(Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Mark claimed in his petition that RECC’s
failure to maintain the banks of Reid Lake was damaging his adjoining property
and that he and his family had spent their own funds to improve and maintain the
banks of the lake behind their property. 
The easement granted to Mark in the judgment is not an easement to
access the banks of the lake behind his property; it is a roadway that runs
north and south behind lots 6 and 7 and connects lots 6 and 21.  The claims alleged by Mark only pertain to
the banks of Reid Lake and do not identify any representations by RECC
regarding the use of the roadway or any action taken in reliance on any such representation.[7]  Even if we were to liberally read the
petition as putting RECC on notice that Mark was raising an easement by
estoppel claim with respect to his access to the banks of the lake, these
allegations are insufficient to put RECC on notice that Mark was contending
that he had an easement by estoppel with respect to the roadway on RECC’s
property that connects lots 6 and 21.  

Mark contends that his petition raised all possible easement
claims by asserting that he could not be a trespasser because he “now has an easement
across defendant’s property.” But this statement must be read in context.  The paragraph specifically cites the elements
of a prescriptive easement and that their use of the property had exceeded ten
years.  Thus, a fair reading of the petition
was that they were claiming an easement by prescription, not by estoppel. Mark’s
petition was insufficient to give RECC fair notice that he was asserting
easement by estoppel as a theory of recovery with respect to the roadway and
therefore, the trial court erred in submitting the easement by estoppel claim
to the jury.

Having determined that the trial court erred in submitting
the claim to the jury, we must now consider whether the error probably caused
the rendition of an improper judgment. 
Here, the jury found that Mark had both an easement by estoppel and a
prescriptive easement.  Because we
determined that the trial court erred in overruling RECC’s motion for JNOV with
respect to Mark’s prescriptive easement claim, we conclude that the trial
court’s erroneous submission of his easement by estoppel claim probably caused
the rendition of an improper judgment. 
Accordingly, we sustain RECC’s second issue, reverse the trial court’s
judgment in part, and render judgment that Mark take nothing on his easement by
estoppel claim.[8]

C.              
Remaining Issues Pertaining to
Easements

RECC raises two other issues pertaining to the award of an
easement appurtenant in favor of Mark. 
In its fifth issue, RECC argues that the judgment’s award of an
appurtenant easement to Mark is defective because (a) it does not adequately
describe the easement awarded, (b) the portions of the judgment that awarded
the easements are not supported by the pleadings, and (c) it granted Mark an
easement over property that is owned by someone who is not a party to the
present suit, thus depriving the owner of his due process rights.[9]  

In its sixth issue, RECC contends that the trial court erred in submitting question one
to the jury because although the question asked the jury to determine whether Mark
and Laureen had an easement by prescription or by estoppel, it did not ask the
jury to find any particular limited use of that easement (i.e.,
commercial use, recreational use, or ingress and egress).  Having sustained RECC’s challenge to the
trial court’s award of an easement to Mark and Laureen, we need not address
these issues.

II.              
Adverse
Possession

In its third issue on appeal, RECC contends that the trial
court erred in overruling its motion for JNOV because there was no evidence
supporting the jury’s finding that Mark or John adversely possessed the tracts
of land located east of lots 5 and 6 to the water’s edge by adverse possession.

Adverse possession is “an actual and visible appropriation of
real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person.”  Tex.
Civ. Prac. & Rem. Code Ann.           §16.021(1) (West 2002).  An adverse possession claim requires proof of actual possession
of the disputed real property that is open and notorious, peaceable, under a
claim of right, adverse or hostile
to the claim of the owner, and consistent and continuous for the duration of
the statutory period.  See Dyer v. Cotton, 333 S.W.3d 703, 710
(Tex. App.—Houston [1 Dist.] 2010, no pet.); see also Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990).           The
appropriate statutory time period is ten years.  See Tex. Civ. Prac. & Rem. Code Ann. § 16.026 (West 2002). 


To establish adverse possession, the claimant must
demonstrate that he actually and visibly appropriated the land for ten or more
consecutive years, such that his use of the land gives the true owner notice of
the hostile claim.  Rhodes, 802 S.W.2d at 645; see
also McWhorter, 177 S.W.3d at 472. 
The possession of the land must “indicate unmistakably an assertion of a
claim of exclusive ownership in the occupant.” 
Rhodes, 802 S.W.2d at
645.  If there is no verbal assertion of
claim to the land brought to the landowner’s knowledge, the adverse possession
must be manifested by such open or visible act or acts that the landowner’s
knowledge will be presumed.  Orsborn v. Deep Rock Oil Corp., 267
S.W.2d 781, 787 (Tex. 1954).  

A.              
Adverse Possession and Dissolved
Corporations

The jury found that both Mark and John acquired property
owned by RECC through adverse possession, even though RECC was dissolved during
the majority of the ten-year limitations period.  The unique factual scenario presented by this
case raises the question:  Can a party
act in a manner that is open and obvious and acquire property by adverse
possession when the true owner is a dissolved corporation?  The answer is yes. See Fed. Crude Oil Co. v. Yount-Lee Oil Co., 73 S.W.2d 969 (Tex.
Civ. App.—Beaumont 1934, no writ) (holding land may be adversely possessed
against  dissolved corporation); see also Hendron v. Yount-Lee Oil Co., 119 S.W.2d 171, 174 (Tex. Civ.
App.—Texarkana 1938, writ ref’d) (quoting with approval rule from Federal Crude Oil that disability to sue
caused by party’s own actions and which may be removed at any time “will not
toll the running of the statues of limitations”).  

Federal Crude Oil not only adopts this rule but explains its rationale and has been approved in
Hendron, a writ refused opinion which
has the precedential value of a Texas Supreme Court opinion.  See Fed.
Crude Oil Co., 73 S.W.2d at 974. In Federal
Crude Oil, a corporation failed to pay its franchise taxes, after which the
secretary of state declared that it had forfeited its right to do business in
Texas.  Id. at 970.  Nearly 23 years
later, the corporation paid its delinquent franchise taxes to bring it to good
standing with the secretary of state.  Id. 
In a subsequent lawsuit Yount-Lee obtained title to a tract of land owned
by the corporation by adverse possession. 
Id. at 970.  On appeal, the corporation argued that
Yount-Lee could not obtain title by adverse possession because the corporation
could not sue and be sued because of its failure to pay its franchise tax,
effectively tolling the ten-year adverse possession period.  Id.
at 974. 

The court disagreed, holding the corporation’s land could be
adversely possessed.  Id. “We think it a sound proposition to
say that a disability to sue, which is due wholly to the default of the person
claiming its benefits and which at all times he had the power to remove, will
not toll the running of the statutes of limitation.  At any time during that period of time
appellant had the right to revive its charter rights and resume all its
corporate powers.”  Id.

In reaching its holding, the court noted that “[i]t is not
the policy of the law to permit a party against whom the statute runs to defeat
its operation by neglecting to do an act which devolves upon him in order to
perfect his remedy against another.  If
this were so, a party would have it in his own power to defeat the purpose of
the statute in all cases of this character.” 
Id. (quoting 17 R. C. L. Limitation
of Actions § 121, at 756 (1917)). 
The court also noted that the statute of limitations specifically
detailed the legal disabilities that would toll the ten-year adverse possession
period.  Id.  The court noted that
there was no explicit exception for dissolved corporations in the statute, and
the court refused to read such a new exception into the statute.  Id.  The court also relied on the general principle
that no one can claim exception from adverse possession statutes except those
excluded expressly or by necessary implication. 
Id.

          Like the corporate entity in that case,
RECC was dissolved by the secretary of state for its own failure to comply with
the law, with the option to be reinstated once the organization was brought
into compliance.  As a matter of policy,
RECC should not be allowed to toll the ten-year statutory adverse possession
period merely because of its own voluntary failure to file paperwork;
otherwise, every corporation could simply stop filing mandatory paperwork to
prevent any close-to-maturity adverse possession claims against them and
“defeat the purpose of the statute in all cases of this character.”  Id.
at 974 (quoting 17 R. C. L. Limitation of Actions § 121, at 756 (1917)).  Additionally, like in Federal Crude Oil, the statute in question provides no explicit
exemption for dissolved corporations. 
Under our current statute, the only persons exempt from adverse
possession are those with a legal disability (i.e., persons younger than 18
years of age, persons of unsound mind, and persons serving in the United States
Armed Forces during a time of war).  See Tex.
Civ. Prac. & Rem. Code Ann. § 16.022 (West 2002).  And unlike age, insanity, or war, corporate
dissolution due to failure to file mandatory paperwork is a legal disability
that RECC voluntarily imposed upon itself. 

We hold that land may be adversely possessed against a
dissolved corporation when that corporation was wholly at fault for its own
dissolution and could have been reinstated during the period during which
adverse possession was claimed.

B.              
Mark and John

RECC contends that there was no evidence that Mark or John
intended to claim the property as their own or that they exclusively and
continuously occupied the property in question for a ten-year period.  According to RECC, Mark and John’s
non-exclusive recreational use of the property was insufficient to put RECC on
notice that they were claiming the property as their own.  RECC further contends that the evidence
conclusively establishes that Mark and John acknowledged RECC as the true owner
of the property, thus, defeating their adverse possession claims as a matter of
law.  

Mark and John respond that they adversely possessed the land
in question because they restored and maintained the property and they used the
land as it was intended—for recreational purposes.  According to Mark and John, all of this was
done in an open and visible manner.    

1.                
Hostile 

A use of property is considered hostile for purposes of adverse
possession when the use was of such a nature and character as to reasonably
notify the true owner of the land that a hostile claim was being asserted to
the property.  See McWhorter,
177 S.W.3d at 472.  The character of use
required to establish adverse possession varies with the nature of the land and
with its adaptability to a particular use. 
Kazmir v. Benavides, 288
S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Vaughan v. Anderson, 495 S.W.2d 327, 332
(Tex. Civ. App.—Texarkana 1973, writ ref’d n.r.e.).  The adverse possession claimant need only use
the land for some purpose to which it is adaptable, and in the same manner an
ordinary owner would use the property.  Kazmir, 288 S.W.3d at 561; Fuentes v. Garcia, 696 S.W.2d 482, 485 (Tex.
App.—San Antonio 1985, writ ref’d n.r.e.).

The Boyers presented evidence that they began making
substantial and costly repairs to the banks of the lake behind lots 5 and 6 in
1992.  Mark testified that as part of the
repair and maintenance efforts that began in 1992, he and his family cleaned
debris people had dumped in the area, installed a drainage pipe, and built up
the eroded banks of the lake with several loads of top soil that Mark had
hauled in for that purpose.  All of this
work was done with a “field permit” obtained from the Harris County Engineer
after reviewing the drainage plan. Mark also testified that they planted grass
and shrubberies on the top soil, not only to prevent future erosion, but to
create a grassy, flat area along the banks of the lake that the Boyer family
could use for recreational purposes. 
According to Mark, this area requires regular mowing and maintenance,
sometimes as often as once-a-week during the summer months. In all, Mark
testified that the Boyers have incurred approximately $150,000 in expenses as a
result of their repair and ongoing maintenance efforts.  Although there is also evidence in the record
that other residents made some arguably similar improvements to the banks of
the lake behind their property over the years, the testimony establishes that
the Boyers’ improvements and on-going maintenance efforts were far more
extensive.

There was evidence that the Boyers not only dramatically
improved the property behind lots 5 and 6, but used it regularly for recreational
purposes.   RECC acknowledges that recreational use is the
only purpose to which the property is adaptable (and which presumably is how an
ordinary user would use the property).[10]  Here, the uncontroverted testimony
establishes that since the Boyers improved the lakeshore in 1992, members of
the Boyer family have used the land behind lots 5 and 6 for a variety of family
and recreational functions, and considered the property their own.  Among other things, Mark’s daughter kept and
fed approximately 50 ducks on the banks of the lake, Mark and John regularly
rode golf carts and motorcycles through that area, and the family used the
banks for picnics and fishing and occasionally allowed neighbors to fish from
their banks.  According to Mark, the
Boyer family uses the property on a weekly basis.  He also testified that the areas that he and
John are claiming by adverse possession are out in the open and visible to
other neighbors with a property abutting the lake.

As set forth above, a party seeking to adversely possess land
only needs to use or enjoy the land in a manner to which the land is adaptable
and as an ordinary user would use the property. 
Here Mark and John used the property as an ordinary user would—by making
significant, costly improvements to the property (regardless of whether they
made the improvements themselves, or had a family member, or family business do
it), by using the property recreationally, and by allowing friends and family
to use the property for recreation. 
Thus, there was some evidence from which the jury was entitled to find
that Mark and John’s use of the property, although similar to their neighbors
in some respects, was of such a nature as to reasonably notify RECC that a
hostile claim was being asserted to the property.  

2.                
Intent

RECC argues that the Boyers did not “intend” to claim the
land as their own, and therefore cannot prevail on their adverse possession
claim.  Orsborn, 267 S.W.2d at 787 (“No matter how exclusive and hostile to
the true owner the possession may be in appearance, it cannot be adverse unless
accompanied by the intent on the part of the occupant to make it so.”)  It is true that a party seeking to claim land
by adverse possession must demonstrate an intent to claim the land; however, the
requisite “intent” is not to take title to another’s property but an intent to claim
the land, as demonstrated by “external circumstances.”  Id.
 “[A]dverse possession is not dependent
on the possessor’s intent to assert title hostile to a known true owner, but
rather on the intent to claim the land. . . . [H]ostile use does not require an
intention to dispossess the rightful owner, or even know that there is one.”  BP
Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 72 (Tex. 2011) (internal
quotation marks and citations omitted). 
Therefore, our focus is not on the Boyers internal thought process, but
on what they did or did not do to
manifest their intent to claim the land. 
RECC argues that Mark and John’s failure to pay taxes on the land in
question and their request for reimbursement in 2006 from RECC for the
improvements they made to the land are evidence that Mark and John were not
claiming the land as their own.  Neither
of these factors, however, is dispositive. 
At most, they merely constitute some evidence for the jury to
consider.  See Rhodes, 802 S.W.2d at
645—46 (payment of taxes did not “demonstrate
actual and
visible appropriation of the land as a matter of law”); Orsborn, 267 S.W.2d at 787 (noting
absence of payment of taxes as part of the evidence demonstrating a lack of
intent to claim the property). As previously discussed, there was some evidence
adduced at trial from which the jury was entitled to find that Mark and John’s
use of the property was of such a nature as to reasonably notify RECC that a
hostile claim was being asserted to the property.  This same evidence is also sufficient for a
reasonable jury to find that they had the requisite intent to claim the land.

3.                
Continuous

Mark and John presented evidence that they and their families
have been occupying and using the property behind lots 5 and 6 since the repair
and maintenance efforts began in 1992. 
The trial testimony also establishes that the Boyer family has been
using the property in question on a weekly basis and that no one tried to stop
them from using the property or informed them that they were trespassing until
RECC’s March 2006 letter.  As such, there
was some evidence from which the jury was entitled to find that Mark and John’s
use of the property was continuous.  

4.                
Exclusive

RECC contends that the Boyer’s use was not exclusive because they
allowed their neighbors to use the property behind lots 5 and 6 for
recreational purposes. But that limited use, with their permission, does not
render their use of the property non-exclusive. 
The established rule in Texas is that an adverse possession claimant’s
use need not be exclusive to the entire world, but only to the title
holders.  Smith v. Jones, 132 S.W. 469, 471 (Tex. 1910) (“We . . . do not
agree that it is always true that a possession, in order to be sufficient, must
be adverse to the whole world.”); see
also Ellett v. Mitcham, 145
S.W.2d 917, 918–19 (Tex. Civ. App.—Eastland 1940, writ dism’d, judgm’t cor.); but see Werchan v. Lakewood Estates
Ass’n, 2009 WL 2567937, at *5 (Tex. App.—Austin Aug. 21, 2009, no pet.)
(“The exclusivity element requires that the claimant’s use be exclusive of all
other persons, especially the property owner.”) 
There is no evidence in the record that any members of RECC—the title holder—ever
entered the land at issue between 1992 and 2006.  As such, there was some evidence from which
the jury was entitled to find that Mark and John’s use of the property was
exclusive to the title holder. 
Furthermore, “allowing” use of the property during that same time period
suggests that the Boyers believed they could have prevented such use if they so
desired.

5.                
Acknowledgement of RECC as Title Holder

Quoting from Bruni v.
Vidaurri, 140 Tex. 138, 150, 166
S.W.2d 81, 88 (1942), for the proposition that “a possessor’s acknowledgment of
title in another” within the statutory ten-year period “will defeat” an adverse
possession claim, RECC contends that Mark and John are barred as a matter of
law from claiming the land in question by adverse possession because they
acknowledged RECC as the true owner of the property in 1992 and 2000 and in
their original petition which was filed in 2006.  

Whether an adverse claimant’s conduct constitutes an
acknowledgment of title in another, however, is normally a question of
fact.  Bruni, 166 S.W.2d at 88; Cuniff v.
Bernard Corp., 94 S.W.2d
577 (Tex. Civ. App.—Beaumont 1936, writ ref’d). 
The 1992 fax sent by Mark merely inquires as to who owns the lake and
the land surrounding the lake without acknowledging who owns it.  RECC also argues that the 2000 letter that
Mark sent to his attorney is an “obvious” attempt to purchase the land and
therefore an acknowledgment of title in RECC. 
In the letter, Mark stated in relevant part, “The General Warranty deed
I have shows the Reid Estates Civic Club as the titleholder. . . Due to the
increased activity by the local taxing districts to return property to the tax
rolls, we would ask that you verify ownership of the [tract] and the possible
ways we may obtain title to this tract of land.”  When questioned about this letter at trial,
Mark explained that he had possession of the land, which he considered to be
his property, and he sent the letter because he wanted to obtain a recorded
title to the property.  Thus, the jury
could reasonably infer from Mark’s testimony that the letter was not an attempt
to purchase the property as RECC argues, because Mark believed that he was
already the rightful owner—albeit without a recorded deed evidencing
title.  RECC also argues that Mark and
John’s pleadings also acknowledge RECC’s ownership of the property.  The pleadings, however, which were filed in
2006—more than ten years after the Boyers took possession of the property—would
only be at most some evidence for the jury to consider.  See
Bruni, 166 S.W.2d at 88 (stating that
acknowledgment of title after statutory period elapsed is not fatal to claim
but is only some evidence for the jury to consider).  See also
Kinder Morgan N. Tex. Pipeline, L.P.
v. Justiss, 202 S.W.3d 427, 439 (Tex. App.—Texarkana 2006, no pet.)
(stating that “whether an adverse claimant’s conduct constitutes an
acknowledgment of title in another is a question of fact” and that “such
admissions constitute evidence contrary to a claim of adverse possession, but
are not conclusive, and must be weighed along with all other evidence of
adverse possession”).

Because these factors are merely some evidence for the jury
to consider with respect to Mark and John’s adverse possession claims, the
evidence does not conclusively disprove Mark or John’s adverse possession claim.

6.                
Conclusion

There is some evidence that Mark and John had actual
possession of the property behind lot 6, that John had actual possession of the
property behind lot 5, and that their possession was open and notorious,
peaceable, under a claim of right, adverse or hostile to the claim of the
owner, and continuous and consistent for the ten-year statutory period.  The evidence does not conclusively establish
otherwise.  Although a reasonable jury
could disagree as to whether their use of the land met all of the required
criteria, we may not overturn the jury’s verdict so long as the evidence falls
within a zone of reasonable disagreement. 
City of Keller, 168
S.W.3d at 822.  Because the evidence
falls within a zone of reasonable disagreement, we conclude that the trial
court did not err in overruling RECC’s motion for JNOV with respect to Mark and
John’s adverse possession claims.

We overrule RECC’s third issue.

III.          
Sufficiency of
Judgment

In its fifth issue on appeal, RECC
contends that the judgment is defective because it does not adequately describe
the real property behind lots 5 and 6 that was awarded by adverse possession to
either Mark or John, and
because Mark and John’s pleadings do not support the judgment.[11] 

A.             
Description of the Property in
the Judgment

RECC argues that the judgment’s description is insufficient because
it does not specify the northern and southern boundaries of the property
awarded to Mark and John by adverse possession, and the maps attached to the judgment
do not identify the lots by number.

The sufficiency of the legal description in any
instrument transferring a property interest is a question of law and subject to
a de novo review.  Dixon v. Amoco Prod. Co., 150 S.W.3d 191, 194 (Tex. App.—Tyler 2004,
pet. denied).  In an adverse possession suit, the test for
determining the sufficiency of a description of land is whether the tract can
be identified with reasonable certainty. 
Zobel v. Slim, 576 S.W.2d 362,
369 (Tex. 1978); see also Rinn v.
Wennenweser, No. 01-07-00763-CV, 2008 WL 2611921, at *2 (Tex. App.—Houston
[1st Dist.] July 3, 2008, no pet.) (mem. op.). 
The judgment in an adverse possession case must identify the land with “reasonable
certainty” such that an officer charged with the duty of executing a writ of
possession could locate the property without exercising judicial
functions.  Zobel, 576 S.W.2d at 369; see
also Gilbreath v. Yarbrough, 472
S.W.2d 185, 189 (Tex. App.—Tyler 1971, writ ref’d n.r.e.) (stating that test
for sufficiency of description is whether judgment so identifies land that
officer, charged with duty of executing writ of possession, can go on ground
and identify it with assistance of competent surveyor).  The description of property in a judgment is
sufficient if “a surveyor could go upon the land and mark out the land
designated.”  Graff v. Berry, No. 06-07-00058-CV, 2008 WL 704310, at *5 (Tex.
App.—Texarkana 2008, pet. denied) (mem. op.) (quoting Wooten v. State, 177 S.W.2d 56, 57 (Tex. 1944)).  A judgment may refer to other writings in
identifying the land in question.  See Rinn, 2008 WL 2611921 at *2; but see Higginbotham v. Davis, 35 S.W.3d 194, 198 (Tex. App.—Waco 2000,
pet. denied) (stating, without citation to any authority, that judgment in
trespass to try title actions “should contain a complete legal description of
the property to which title has been established, so that reference to
extrinsic documents is unnecessary”).  In
reviewing a judgment for sufficiency of property description, Texas law does
not require us to scrutinize the conveyance with a view to defeat it; instead,
“every reasonable intendment will be made in their favor, so as to secure, if
it can be done consistent with legal rules, the object they were intended to
accomplish.”  AIC Mgmt. v. Crews, 246 S.W.3d 640, 645 (Tex. 2008) (quoting Hermann v. Likens, 39 S.W. 282, 284
(Tex. 1897)).  Here, the jury found that
John and Lyda had “adversely possessed the land east of lot 5 of Reid Lake
Estates to the water’s edge for at least a 10 year period” and that Mark and
Laureen had “adversely possessed the land east of lot 6 of Reid Lake Estates to
the water’s edge for at least a 10 year period.”  The trial judge rendered a judgment on the
verdict as follows:

It is therefore ORDERED, ADJUDGED and DECREED that the plaintiffs John
L. and Lyda Boyer be awarded fee simple title to the property east of lot 5 to
the [water’s] edge and Mark L. and Laureen Boyer be awarded fee simple title to
the property east of lot 6 to the water’s edge as shown on exhibits “A” and “B.”

The
trial court attached both exhibits to the judgment.  Exhibit A is a topographical map of the
eastern shore of Reid Lake and the properties abutting the lake; it identifies
the water’s edge.  Exhibit B is a survey
of Reid Lake and the properties abutting the lake shows the property lines of
the lots surrounding the lake, identifies the property owners of each lot, and
identifies the top of the bank for the entirety of Reid Lake.  

RECC first
argues that the description of the property in the judgment is insufficient
because it does not specify the northern and southern boundaries of the awarded
property located east of lots 5 and 6. 
According to RECC, there are two possible interpretations a surveyor
might adopt for this provision in the judgment, and thus the location of the
property cannot be determined with reasonable certainty.  First, a surveyor could interpret the
judgment as fixing the boundaries of the land east of Lots 5 and 6 by extending
the northern and southern boundaries of those lots to the water’s edge.  Second, a surveyor might alternatively
interpret the judgment as setting those boundaries only around the improvements
that Mark and John made to the two lots. 
These two possible interpretations, according to RECC, require a
decision exercised with discretion, and therefore the judgment is legally insufficient.
RECC did not present any evidence that its suggested second interpretation
would be an interpretation of a professional surveyor.  During cross-examination, RECC’s expert  did not disagree that he could locate the
northern and southern boundaries of the eastern property by drawing a straight
line from the existing northern and southern boundaries for lots 5 and 6.  We conclude that the judgment described the
northerly and southern boundaries of the two tracts with reasonable certainty.

RECC
next argues that the description is inadequate because the depth of the property
to the east is uncertain.  According to
RECC, the property east might  reach the
water’s edge on the other side of the
lake and therefore include the lake within those boundaries since all of that
land is technically “east” of lots 5 and 6. 
Common sense, however, dictates that “east of [lot 5 and lot 6] to the
water’s edge” stops at the first water’s edge. 

We
conclude that a reasonable, competent surveyor would read the judgment to mean
what it says—in awarding the land east of lot 5 and lot 6 to the water’s edge,
the trial court awarded land immediately east of lot 5 and lot 6, bounded by
extending the northern and southern boundaries of lot 5 and lot 6, ending at
the water’s edge on the western side of the lake.  Such a reading does not require the surveyor
to exercise his discretion, but merely his common sense. 

RECC
also contends the judgment insufficiently describes the property because
although the judgment refers to the lots by number, the maps attached to the
judgment do not.  In order to locate
those lots, RECC argues, one would need to rely upon tax maps that are not in
evidence or referred to in the judgment. 
However, the Texas Supreme Court has stated that we should be willing
“to read property descriptions in tax judgments alongside the property
descriptions in related petitions and judgment rolls to identify the property
conveyed, thus avoiding the inequity of erasing otherwise valid tax judgments
at the public’s expense.”  AIC Mgmt., 246 S.W.3d at 647 (citing Willoughby v. Jones, 251 S.W.2d 508
(Tex. 1952)).  Although the Supreme Court
made this statement regarding judgments conveying land to satisfy tax
judgments, we conclude that the principle that surveyors can refer to public
documents (like tax maps or appraisal records) in identifying property awarded
at trial is equally applicable in cases involving adverse possession.  See
Preston Exploration Co. v. Chesapeake Energy Corp., CIV.A. H-08-3341, 2010
WL 3155893, at *4 (S.D. Tex. Aug. 10, 2010) (interpreting AIC Management to hold that courts may refer to prior tax
petitions, HCAD records, and tax tract maps, all of which are public records,
in interpreting judgments awarding land in disputes over oil and gas
interests). 

Here,
Mark and John’s expert witness surveyor testified that he would be able to
identify the land in question with the judgment, the attached maps, and a tax
map.  And RECC concedes in its brief that
a person using the tax maps could locate lots 5 and 6.  Accordingly, we hold that the judgment
describes with reasonable certainty the land in question awarded to Mark and
John by adverse possession.

B.             
Sufficiency of Description of
Land in Pleadings Claims

The Texas Rules of Civil Procedure state that “[t]he judgment
of the court shall conform to the pleadings, the nature of the case proved and
the verdict, if any.”  Tex. R. Civ. P. 301.  A judgment in favor of the plaintiff in a
suit for land must be based upon proper allegations and a sufficient
description of the land must be contained in the pleadings.  Stovall
v. Finney, 152 S.W.2d 887, 890 (Tex. Civ. App.—Amarillo 1941, no writ).

RECC argues the description of the land sought in Mark and
John’s pleadings is vague.  The trial
court rejected this contention, repeatedly stating that the pleading was
“clear” and the parties were fully aware of the property that was at issue.  

RECC specifically contends that  the phrase “with regard to the property east
of lots 4, 5, and 6 by limitation title” could be interpreted to mean that Mark
and John are claiming all of the RECC
property east of lots 4, 5 and 6 to the edge of Reid Lake, meaning the banks
surrounding the entire lake.[12]  We do not agree for the same reasons as
described above for why we do not agree that the judgment itself is vague.  The pleadings are describing land to the east
of the lots to the water’s edge.  It
would not be reasonable to interpret these pleadings as claiming property on
the other side of the lake.

RECC also argues that an adverse possession claim may only be
brought as a trespass to try title action under Texas Rule of Civil Procedure
738.  Citing Stewart v. Collatt, RECC contends that the property description in
Mark and John’s pleadings is so vague that it does not satisfy Rule 738’s
strict pleading requirements.  111 S.W.2d
1131, 1132 (Tex. Civ. App.—Fort Worth 1937, no writ).  Stewart,
however, is factually distinguishable from the present case.  In Stewart,
the plaintiffs brought a trespass to try title action under the predecessor to
Rule 783.  Id.  The property was
identified with three separate descriptions. The court of civil appeals held
that the plaintiff’s pleadings were “fatally defective because of uncertainty
and repugnancy in the description of the land sought to be recovered.”  Id.  The descriptions in Mark and John’s
pleadings, on the other hand, are fairly straightforward: property east of lot
5 and 6 to the water’s edge, as shown on the map attached to the third
supplement to their original petition. 

Mark and John argue, and we agree, that their pleadings are
sufficient even under the stricter pleading standards of a trespass to try
title action, which requires a “description of the premises by metes and
bounds, or with sufficient certainty to identify the same, so that from such
description possession thereof may be delivered.”  Tex.
R. Civ. P. 783.  Mark and John’s
pleadings include a tax map that identifies the lots in question by lot number
and is similar to the survey attached to the judgment as Exhibit B. 

We conclude that Mark and John’s pleadings sufficiently
described the property in question, even under the stricter pleading standards
of a trespass to try title action.

Having determined that the judgment describes with reasonable
certainty the land in question awarded to Mark and John and that Mark and
John’s pleadings sufficiently described the property in question even under the
stricter pleading standards of a trespass to try title action, we overrule
RECC’s fifth issue.

IV.           
Trespass

A.               
Trespass as a Matter of Law

In response to question 4, the jury rejected RECC’s claims
that Boyer, Inc and Lonestar trespassed on its property.  RECC raises two issues on appeal with respect
to those claims.  In its fourth issue,
RECC contends that the trial court erred in overruling RECC’s motion for JNOV
because the evidence conclusively established that both Lonestar and Boyer,
Inc. trespassed on RECC’s property located east of lots 4, 6 and 7. 

With respect to the property located to the east of lots 6
and 7, RECC maintains that a reversal of the trial court’s judgment awarding a
“roadway” easement to Boyer, Inc. and Lonestar over that portion of RECC’s
property requires a finding that both companies’ undisputed use of the roadway
constitutes a trespass.  Boyer, Inc. and
Lonestar do not disagree in their brief. 
Because Boyer, Inc. and Lonestar have conceded that they did not have an
easement, and it therefore necessarily follows that they trespassed on RECC’s
property,[13]
we sustain this limited portion of RECC’s fourth issue, reverse this portion of
the judgment of the trial court, and render judgment in favor of RECC that
Boyer, Inc. and Lonestar trespassed on RECC’s property located east of lots 6
and 7 as a matter of law, and remand the case for the determination of damages
for this trespass. 

B.               
Jury Charge on Trespass

With respect to the area east of lot 4, RECC concedes that it
did not prove trespass as a matter of law. 
Nevertheless, RECC contends that the judgment should be reversed and the
case should be remanded for a new trial on this issue due to an error in the
jury charge.  Specifically, in its
seventh issue, RECC contends that the trial court erred in submitting question
four to the jury because it contained an incorrect statement of the law with
respect to RECC’s trespass claim.  RECC
argues that the trial court erred in instructing the jury that “[a] person is
not a trespasser if he has a good faith belief that he is the true owner, and
has reasonable grounds for the belief, but he must be ignorant that his title
is contested by one having a better right.” 
RECC argues, and the Boyers concede, that there is no “good faith”
defense to the tort of trespass to real property and that the inclusion of the
“good faith” trespasser instruction was erroneous. 

          We
agree that the trial court’s inclusion of the “good faith” trespasser
instruction was erroneous.  See generally
Wilen v. Falkenstein,
191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied)  (citing Trinity Universal Ins. Co. v.
Cowan, 945 S.W.2d 819, 827 (Tex. 1997)
(stating that party’s subjective intent or awareness of property’s ownership is
irrelevant for purposes of determining whether party committed tort of trespass
to real property).  We also agree that
the error, which misled the jury into believing that there was a “good faith”
defense to the tort of trespass to real property, probably resulted in the
rendition of an improper judgment.  See Transcon.
Ins. Co. v. Crump,
330 S.W.3d 211, 225 (Tex. 2010) (quoting Columbia Rio Grande Healthcare,
L.P. v. Hawley, 284 S.W.3d
851, 856 (Tex. 2009)) (stating appellate court should not reverse judgment for
charge error “unless the error was harmful because it probably caused the
rendition of an improper verdict”).  

Accordingly, we reverse the judgment of the trial court and
remand the case for a new trial on RECC’s trespass claim with respect to RECC’s
property located to the east of lot 4.

Conclusion

We sustain RECC’s first, second and fourth issues, and overrule
RECC’s third and fifth issues.  Accordingly,
we affirm the portions of the trial court’s judgment awarding (1) John the land
east of lot 5 and to the water’s edge by adverse possession and (2) Mark the
land east of lot 6 and to the water’s edge by adverse possession.  We
reverse the remaining portions of the trial court’s judgment and render
judgment that (1) Mark, John, and Boyer, Inc. take nothing on their
prescriptive easement and easement by estoppel claims, (2) Lonestar take
nothing on its easement by estoppel claim, (3) Lyda and Laureen take nothing on
their adverse possession claims, and (4) RECC succeed on its trespass claims
against Boyer Inc. and Lonestar for the land east of Lots 6 and 7. We remand
the case to the trial court for further proceedings limited to (1) RECC’s
trespass claims against Boyer Inc. and Lonestar for the land east of lot 4 and
(2) determination of damages for RECC’s trespass claims.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

Justice
Sharp concurring in the judgment only











[1]           In 2002, Boyer, Inc. and Lonestar were
tenants of lots 5 and 6, respectively. 
Boyer, Inc. outgrew the space and moved to a new location across the
street a few years later.  Lonestar now
occupies both spaces.





[2]           They also concede that the trespass question
contained an improper instruction, and contend that a limited remand on the
issue of liability and damages for trespass is therefore appropriate.  We address this issue below.





[3]           There is also evidence in the record that
prior to Mark and Lyda’s purchase of lot 21 in 2002, John drove a golf cart and
jeep on the roadway “any number of times” and that Boyer, Inc. and Lonestar
made extensive commercial use of the roadway from 2002 until 2006.  Even if we were to consider this evidence for
purposes of our analysis (an issue which we do not decide), the evidence would
still be insufficient to entitle Mark to an easement by prescription with
respect to the roadway.

 





[4]           According
to Mark, they also used it “a couple of times” to assist their neighbor, Dell
Webb, with his road.  Mark did not
describe when this action occurred before 2002 nor the actions taken to assist
Webb. 





[5]           It is unnecessary,
therefore, for us to reach RECC’s additional contention that even if the issue
of easement by estoppel was properly before the jury, there was no evidence to
support the trial court’s judgment with respect to this issue.





[6]           The
trial court was not asked to grant a trial amendment based on lack of surprise
as a result of the estoppel affirmative defense.

 





[7]           The
only statement identified in the Boyers’ petitions (they filed an original and
four supplemental petitions) is a statement in which RECC stated that it would
not take action to arrest the encroachment of the lake onto the banks of the
lakefront properties.





[8]           An
easement by prescription was, however, properly plead as a defense to RECC’s
trespass claim and therefore was properly submitted to the jury as a defense.

 





[9]           Because
the Boyers and Lonestar concede that the trial court’s judgment erroneously
awards John, Boyer Inc. and Lonestar an easement appurtenant, we have restated
the issue to make it clear that we do not consider the issues related to that
portion of the award.  





[10]
        Although
it might appear, as RECC contends in its brief, that fishing, feeding ducks and
other recreational activity are insufficient to establish hostile use of the
land, such recreational activities can be sufficient to establish hostile use
with respect to land that both parties concede is only suitable for
recreational pursuits.  Otherwise, it
would be impossible as a matter of law for anyone to adversely possess land
intended for recreational purposes, which would be contrary to our precedent that
holds that no one can claim exemption from these statutes unless they are
excluded expressly or by necessary implication. 
See Trustees of College of De Kalb
v. Williams, 143 S.W. 348, 350 (Tex. Civ. App.—Texarkana 1912, writ ref’d)
(stating no one can claim exception from adverse possession statutes except
those excluded expressly or by necessary implication).





[11]          As
previously discussed, RECC also argues that the judgment is defective because
(1)  it awarded an appurtenant easement
to Boyer, Inc., Lonestar, John, and Mark, (2) it does not adequately describe
the easement awarded, (3) the portion of the judgment that awarded the easement
is not supported by the pleadings, and (4) it granted appellees an easement
over property that is owned by someone who is not a party to the present suit,
thus depriving the owner of his or her due process rights.  Having sustained RECC’s challenges to the
trial court’s award of an easement to Boyer, Inc., Lonestar, John, and Mark, we
need not address these issues.





[12]          Mark
abandoned his claim to RECC’s property east of lot 4 by adverse
possession.  





[13]         For lot 6, the damages will be limited to the time
ownership was acquired by Mark through adverse possession.